## Bolin v. Commonwealth.

(Decided January 16, 1925.)

### Appeal from Breathitt Circuit Court.

1. Criminal Law—Continuance Discretionary and Ruling Not Disturbed, Unless Discretion is Abused to Clear Prejudice of Defendant.—Granting of continuance in criminal case is addressed to sound discretion of court, whose action in overruling motion will not be disturbed on appeal, unless discretion is abused to clear prejudice of defendant.

2. Criminal Law—Facts Considered in Passing on Motion for Continuance Stated.—In passing on motion for continuance, court should consider furnishing of reasonable opportunity to prepare and present defense and see that trial is so expedited as not to result in unreasonable delay.

3. Criminal Law—Whether Defendant is Stranger in Community, and Witnesses Scattered Over Wide Territory, Considered in Passing on Motion for Continuance.—Each motion for continuance must be determined on its own peculiar facts, such as whether defendant is stranger in community, and witnesses are scattered over wide territory or local to place of trial.

4. Criminal Law—Denial of Continuance for Lack of Sufficient Time for Preparation Held Not Error.—Where defendant had 38 days from time of arrest to prepare for trial, and knew and could easily have procured attendance of persons with whom he associated during night of homicide and knew practically all Commonwealth witnesses, who were residents of town in which homicide occurred, court did not err in denying continuance.

5. Criminal Law—Refusal of Continuance to Procure Testimony of Absent Witness Held Not Abuse of Discretion.—Denial of continuance to procure testimony of absent witness whose affidavit was admitted as to sending defendant to store in town of homicide on night thereof to buy cartridges of size with which homicide was committed, held not abuse of discretion, in absence of explanation as to reason for such request.

6. Criminal Law—New Trial Not Granted for Newly Discovered Cumulative and Impeaching Testimony, Unless it would Probably Produce More Favorable Verdict.—New trial will not ordinarily be granted for newly discovered cumulative and impeaching testimony, unless it would probably produce more favorable verdict.

7. Homicide—Refusal of New Trial for Newly Discovered Evidence Contradicting Testimony Identifying Defendant, Held Not Abuse of Discretion.—Refusal of new trial for newly discovered cumulative and impeaching testimony of physician as to deceased's dying declaration that she did not see nor know who fired shot, held not abuse of discretion, in view of incriminating circumstances proven, aside from testimony of witnesses identifying defendant as guilty party.

8. Witnesses—Prior Conviction of Felony May be Proved by Defendant Testifying for Himself in Criminal Case.—Civil Code of Practice, section 597, authorizing proof by witness of his conviction of felony for purpose of impeaching him, applies to defendant testifying for himself in criminal case.

9. Criminal Law—Reference to Erroneously Excluded Testimony in Commonwealth's Attorney's Argument Not Justified.—That court erroneously excluded defendant's testimony as to his prior conviction of felony does not justify reference thereto by Commonwealth's attorney in his argument.

10. Criminal Law.—Commonwealth's Attorney's Reference to Defendant as Ex-Convict Held Not so Prejudicial as to Authorize

Reversal.—Commonwealth's attorney's reference to defendant as ex-convict in argument to jury, after erroneous exclusion of defendant's testimony as to prior conviction of felony, held not so prejudicial as to authorize reversal of conviction, where court sustained objections thereto.

11. Criminal Law—Reference, in Argument for Death Penalty, to Possibility of Release from Penitentiary Held Not so Prejudicial as to Authorize Reversal.—Commonwealth's attorney's reference, in argument for death penalty, to possibility of release from penitentiary by governor and prison commissioners in case of life imprisonment, held not so prejudicial to defendant as to authorize reversal of judgment of conviction with death sentence.

CHESTER A. BACH for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On June 13, 1923, the grand jury of Breathitt county returned an indictment against appellant, George Bolin, accusing him of willfully murdering Manday Mays, a woman, which crime was committed at about 10:30 p. m. May 25, 1923. Appellant was arrested charged with the commission of the homicide about two hours thereafter and was from thence afterwards incarcerated in the Breathitt county jail. Following the return of the indictment it was set for trial on July 3 thereafter, at which time. defendant moved for a continuance and filed his affidavit in support thereof, which was supported by the affidavit of employed counsel to the effect that he had not had time to prepare the defense, and the same complaint was made in defendant's affidavit, and he also stated that a number of witnesses for whom he procured subpoenas were absent, but he named therein only one absent witness and of course did not set out the evidence of any of them except the one named, who was Walter Gilbert. The court overruled the motion and on the trial defendant was permitted to read his affidavit as the testimony of the absent witness Gilbert. The jury, under the instructions given to it by the court, convicted appellant and fixed his punishment at death.

His motion for a new trial was overruled, and he prosecutes this appeal complaining of only three alleged grounds for reversal, which are (1), error of the court in overruling the motion for a continuance; (2), error in refusing the motion for a new trial because of newly

discovered evidence, and (3), improper and prejudicial statements made by the Commonwealth's attorney in his closing argument to the jury. No complaint is made as to the sufficiency of the evidence to sustain the conviction, nor of the instructions given or refused, though the latter ground was incorporated in the motion for a new trial. We have examined the instructions and find them strictly accurate, and the appeal will be disposed of without further reference to them, or the refusal of the court to further instruct the jury under its duty to give the whole law of the case, since we find no ground for complaint in the latter particular. We will, therefore, take up and dispose of the grounds relied on in the order named.

1. It is conceded in brief and which is undoubtedly correct that the granting of a continuance of the trial in a criminal case is one addressed to the sound discretion of the court, and unless that discretion is abused to the clear prejudice of the defendant, the action of the court in overruling the motion will not be disturbed on appeal. The facts, which the court should always take into consideration in exercising its discretion when passing upon the motion, are (a), the furnishing to defendant of a reasonable opportunity to prepare for and present his defense; and (b), to see that the trial is so expedited as not to result in unreasonable delay, so as to render it both as to the defendant and the Commonwealth, consistent with fairness and justice to each. Necessarily each case must be determined upon its own peculiar facts. When the defendant is a stranger in the community without acquaintances or friends, and the witnesses are scattered over a wide territory, some of whom perhaps reside in a foreign jurisdiction, much more time would be required to enable the defendant to fairly, properly and justly present his defense than in a case where the defendant resided and was known in the community and possessed acquaintances and friends therein, and where the witnesses were local to the place, since in the latter case due and proper preparation could be made with less effort or time than in the former one. Here the defendant had from May 26, when he was arrested, to July 3, a space of 38 days within which to prepare for his trial. If he was innocent and not at the place where the homicide occurred, he knew it; as he also knew of his whereabouts during the fatal night, and he likewise knew the person or persons with whom he associated on that occasion and the slightest effort would have procured

their attendance. He also knew practically all the witnesses for the Commonwealth, and what their testimony would be, and they in turn were residents of the town of Jackson in which the homicide occurred; and it would seem that there would be but little difficulty in discovering material witnesses if they were in existence. The case is unlike those of Penman v. Commonwealth, 141 Ky. 660; Samuels v. Commonwealth, 154 Ky. 758; Allen v. Commonwealth, 168 Ky. 325, and Miller v. Commonwealth, 197 Ky. 703, relied on in brief.

As illustrating the influential reasons for the holding in those cases, we will refer to the conditions in only one of them, i. e., the Miller case. In that case the defendant was a stranger in the community; the homicide was committed on October 4, 1922, and the indictment was returned three days thereafter (October 7), and the trial was had five days thereafter on October 12. The principal defense was insanity, the evidence to sustain which was by witnesses who resided in Alabama, at which place the parents of defendant lived and where he had made his home up to a short time before the homicide, and where was also located a lunatic asylum maintained by the state and in which defendant had been incarcerated. Because of the brief intervening time, defendant was also afforded but little and clearly insufficient time to make preparation for his defense if the case had been one where the witnesses to all of the material facts were local to the scene; and under such circumstances it was held by us that the plain dictates of justice and fairness to the defendant required that he should have further time in which to prepare his defense. The other cases referred to in that opinion, including some of those relied on herein and above referred to, presented similar states of fact, and each of them furnishes potent grounds for the postponement of the trial to such a time as the defendant, in the exercise of reasonable diligence, could prepare for and present his defense. We, therefore, conclude that the court did not err in overruling the motion for a continuance because of the lack of sufficient time for preparation; which leaves for consideration the absence of the witnesses.

As stated, no absent witness was named except Gilbert, and it was claimed that he would testify that defendant on the same night of the homicide, and about one and one-half or two hours prior thereto, was sent by witness to a store in Jackson to buy some No. 32 cartridges

for him, and that defendant subsequently returned to witness with the cartridges. The fact of the purchase of the cartridges by defendant, and which were of the same size with which the homicide was committed, was proven by the merchant from whom they were bought and admitted by defendant, but he claimed that he did so at the instance of Gilbert, and that he later delivered them to Gilbert. But his explanation as to the reason why he was so procured, or why Gilbert did not buy the cartridges himself, is very unsatisfactory and by no means convincing. He testified that somewhere between a half a mile and a mile from the city of Jackson, Gilbert made the request of him and agreed to wait at that spot until defendant could return with the cartridges; that he went on that mission and purchased the cartridges and before returning to Gilbert he visited a restaurant and other places, consuming the time referred to, during all of which Gilbert was stationed at the designated place on the side of a public road. He gave no reason for the unreasonable request of Gilbert and, when asked "Do you know why he didn't go down and get the cartridges instead of sending you?" he answered "No, I do not." Notwithstanding the incredible nature of that testimony, the affidavit as to what Gilbert would say concerning it was read, and we do not think the court abused a sound discretion in overruling the motion for a continuance.

2. A portion of the alleged newly discovered evidence was furnished by the affidavits of some witnesses concerning statements made by certain designated jurors who tried the case to the effect that they entertained an adverse opinion to defendant and would convict him if they were accepted on the jury. Counter affidavits were filed on those points, and the court necessarily found that no such statements or remarks were made by the jurors referred to, and it is our opinion that the court was correct in that conclusion. The only other alleged newly discovered witness was Dr. C. H. Hurst, who was called to visit the deceased directly after she was shot, she having lived about 24 hours after she was wounded. After the doctor visited the deceased she made a dying declaration in which she stated that she pulled aside a window curtain and looked out upon the porch in front of the room and saw and recognized the defendant, and he immediately fired at her and shot through the window. At this point, we might say that a witness by the name of Spencer was at the house of deceased at the time of

the homicide and he looked through another window in an adjoining room out on the same porch and he also recognized defendant as the one on the porch and who fired the fatal shot. The mother of deceased recognized the voice of defendant when he sought admittance in the house and was refused by her, and those three witnesses were the only ones who testified to the identity of defendant. The doctor, in his affidavit filed after the trial, stated that deceased, at the time he called to see her professionally, stated that she "did not see and did not know who had fired the shot," and that her mother was close enough to have heard that remark, but remained silent. Other witnesses who testified in the case gave substantially the same testimony in contradiction of the Commonwealth's witnesses, i. e., the deceased and her mother, Malinda Johnson. There were also similar contradictions as to the identifying testimony of the third witness for the Commonwealth, and at most the testimony of the physician was but cumulative as well as clearly impeaching in its nature, and we have frequently held, in accordance with the general rule upon the subject, that a new trial will not ordinarily be granted for such newly discovered cumulative and impeaching testimony. Substantiating the rule as to cumulative testimony, we refer to 16 Corpus Juris 1199; Crouch v. Commonwealth, 172 Ky. 463; Jones v. Commonwealth, 158 Ky. 533; Lawson v. Commonwealth, 152 Ky. 113, and a great number of other cases from this court cited in note 56 to the text; and substantiating the above stated rule as to newly discovered impeaching testimony (see same volume 1202 and a long list of Kentucky cases cited in note 770 to the text). It is true that there are exceptions to both of those rule, the most material and prominent of which is that, if under all the facts and circumstances of the case, the alleged newly discovered testimony, notwithstanding it may be both cumulative and impeaching, would in all probability produce a more favorable verdict, the court in the exercise of a sound discretion would be authorized to grant a new trial therefor. As stated in the text of the publication referred to on page 1205, the rule for the guidance of the court is: "In its final analysis the matter rests very much in the discretion of the trial court; and if the evidence not only tends to impeach the state's witnesses but is also of such affirmative character as would probably produce a more favorable result on a new trial the motion will be granted, especially

where defendant was surprised on the trial, or where the state's evidence was weak and unsatisfactory."

Aside from the testimony of the identifying witnesses, there was proven at the trial a number of guilty circumstances, one of which, that of purchasing the cartridges, we have already referred to. Another was that defendant declared to at least three witnesses on that same night and before the homicide that he intended to commit a homicide before daylight. Some of the witnesses said that he threatened to kill one of them and that if he did not do so that he would kill some other son of a b—. There was also testimony as to the defendant returning to his home shortly after the shooting and endeavoring to enter it from the rear, and likewise other facts and circumstances contradictory of the defendant's testimony and of a more or less guilty nature. So that, if we should concede that due diligence was exercised to discover the witness, Hurst, and what his testimony would be (which is exceedingly doubtful, since it must have been known that he was the attending physician and the slightest diligence would have suggested interviewing him as to what he heard or discovered while visiting the deceased) we are not prepared to say that his both cumulative and impeaching testimony would have produced a more favorable result, and under all the facts and circumstances of the case we do not think the court abused its discretion in refusing the new trial because of that alleged newly discovered evidence.

3. The remarks of the Commonwealth's attorney complained of under ground (3), were (a), "The Commonwealth will not be satisfied in a case like this with anything but a death penalty; you gentlemen have sworn that you would inflict a death penalty and I demand it of you. The time has come to show ex-convicts and criminals that they cannot shoot women down in the nighttime in their own homes," and (b), "You cannot impose a punishment that amounts to anything by sending a man to the penitentiary for life; weak-kneed governors and prison commissioners turn them out on the community and the only punishment that will instill fear in the hearts of men who shoot women through windows in their homes is death—death." The objection to statement (a) is directed to the reference therein to "ex-convicts," when it is insisted there was no evidence that defendant had ever been convicted or punished for a felony. It is true that the court excluded testimony offered to

prove that fact, since the Commonwealth's attorney asked defendant on cross-examination if he had ever been con- victed of a felony. The court on objections declined to permit him to answer, when the Commonwealth avowed that if he was permitted to answer he would truthfully say "that he had theretofore been convicted of murder and is now and was out on parole at the time of the kill- ing of Mandy Mays." The reason why the court declined to permit the defendant to answer that question is not shown, but his refusal to do so was clearly erroneous since, under the express provisions of section 597 of the Civil Code, it is competent to prove by a witness, for the purpose of impeaching him, that he had theretofore been convicted of a felony, which provisions apply to a de- fendant testifying as a witness in his own behalf upon his trial under a criminal charge. Farmer v. Common- wealth, 28 Ky. L. R. 1168, on page 1171; Britton v. Com- monwealth, 29 Ky. L. R. 857, on page 860, and Sullivan v. Commonwealth, 158 Ky. 536.

Notwithstanding that rule, it was perhaps the duty of the Commonwealth's attorney to confine his remarks to the testimony that the court permitted to be intro- duced, and he could not justify his reference because the court erroneously excluded the testimony to which he re- ferred in his argument. But whether such reference under the facts of this case would be sufficiently preju- dicial to authorize a reversal is a question not decided by us because the court sustained the objections to the state- ment in so far as it referred to defendant as being an ex- convict, and we think it would be trifling with justice to hold that, under the circumstances, the error, if conceded, was so prejudicial as to authorize a reversal when upon another trial the fact could be proven and the defendant could not then obtain even the benefit of the court's ex- clusion.

Lastly, it is insisted that statement (b) was both erroneous and sufficiently prejudicial to authorize a re- versal of the judgment, and in support of that contention a number of cases from this court are cited, the most pertinent and perhaps the strongest one being Chappell v. Commonwealth, 200 Ky. 429. Another one bearing di- rectly upon the objectionable feature of the statement is that of Postell v. Commonwealth, 174 Ky. 272. In neither of those cases was the judgment reversed on account of the jury being informed as to the probable consequences of a life imprisonment, although it was held in them that

so informing the jury was improper and that the practice should not be indulged in. In the case of Bailey v. Commonwealth, 193 Ky. 687, in commenting upon the rule circumscribing the latitude of the Commonwealth's attorney in his argument to the jury, we said that it "does not require that the prosecuting attorney shall withhold from the jury his views touching the extent of the punishment which he in good faith believes the enormity of the crime merits." And in the case of Lawler v. Commonwealth, 182 Ky. 185, in commenting upon the same subject we said: "If he (the Commonwealth's attorney) thought the crime was of sufficient magnitude to require the death penalty, he had a right to say so, and to state the reasons why he thought the jury should fix that punishment rather than a life sentence, which might possibly be followed by the defendant's eventual release to become a prey upon society, as he had formerly been." Perhaps those excerpts were intended to apply to comments of the Commonwealth's attorney as based upon the facts and circumstances proven in the case, and did not attempt to justify references by the Commonwealth's attorney in his argument to the consequences flowing from the due administration of other departments of the state and which would possibly follow the infliction of a different punishment, and it was for that reason that the practice was condemned in the Postell and Chappell cases, *supra*. But after all, we are not authorized to reverse a judgment of conviction under express code provisions unless the error complained of was so prejudicial to the rights of the defendant as to authorize it.

If the defendant in this case committed the deed for which he was convicted (and there is abundant testimony to establish it), then he has but little grounds to complain of the infliction upon him of the severest punishment, for, according to the testimony of the Commonwealth, it was a cold-blooded assassination without the pretense of provocation, and the only fact that the jury was called upon to determine was whether he was the perpetrator; and it is our conclusion, reached after a careful study of the entire record, that we would be unauthorized to reverse the judgment of conviction upon the sole ground now under consideration.

There being nothing shown authorizing us to reverse the judgment, notwithstanding its severity, and which fact has been duly considered by us, it is therefore affirmed. Whole court sitting.