## Romans v. Commonwealth.

(Decided November 12, 1929.)

W. W. BARRETT for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Reversing.

The appellant, who is 20 years of age, has been convicted of manslaughter and sentenced to serve 21 years in prison.

The indictment is captioned "Pike Circuit Court." So much of it as is material is as follows: "The grand jury of the County of Pike . . . accuse Edward Romans of the crime of willful murder, committed in manner and form as follows, to-wit: The said Edward Romans in the said county of ———— on the 29th day of February, 1929, and before the finding of this indictment did . . . kill," etc. It is contended in behalf of the appellant that the indictment does not state a public

offense because the name of the county is left blank and was not given as required by the Code of Criminal Practice. The point is untenable, for while the specific name of the county is not given in the descriptive portion of the indictment, it does show that the crime was committed "in the said county," which of course referred to the county of Pike, as stated in the accusative. That was sufficient. Collins v. Commonwealth, 141 Ky. 564, 133 S. W. 233; Martin v. Commonwealth, 145 Ky. 752, 141 S. W. 54.

The parties were not acquainted with each other. The defendant resided in Greenup county and had been visiting at his brother's home in Pike county for about ten days before the homicide. In the late afternoon of election day, November 6, 1928, the appellant, Romans, and deceased, Otis Wilson, in company with several others, were leaving the grounds of a voting place, when there was some cursing and a difficulty arose between the men, apparently with little or no provocation. The evidence is contradictory as to who struck the first blow. It is agreed that the men clinched and in the scuffle fell to the ground with Wilson on top of Romans, who was a few years younger and weighed about 40 pounds less than Wilson. From this point on the evidence is again conflicting.

The proof of the commonwealth is that Romans got Wilson's .45 pistol from the latter's pocket while scuffling on the ground and reached up and around his body, he still being on top, and fired twice, one shot taking effect in Wilson's back. Wilson rolled off or got up and about 48 hours thereafter died at the hospital. Burl Good, who seems to have been Romans' friend, took possession of the pistol, and then he ran up the road or creek. A self-constituted posse of friends of Wilson pursued him. Several shots were fired during the pursuit and in a little while Romans surrendered. Several witnesses testified that on various occasions the defendant admitted having shot Wilson, in one instance rather boasting that he had done so with his own pistol.

The defendant testified that he was walking along with a young lady, and admitted that with an oath he complained because some others in the crowd did not come along. He says Wilson accused him of cursing him, which he denied three times, and then, to quote his testimony: "He (Wilson) walked on a few steps and turned around and said By God you did curse me and he started

back toward me and we met right there and he struck at me and I dodged his lick and then he grabbed me and threw me down there on the ground and was holding me there and he reached around somewhere with his right hand, I couldn't say exactly around there where it come from but he reached around there and got a pistol and as he come around with it in his hand I caught it with my left hand and about that same time there was two shots fired, about the time that I got hold of the barrel, I got it about middle ways and holding it off of me and me and him scuffled with it and I couldn't say who fired the shot nor nothing of the kind and then I raised up after the shots were fired.''

The defendant denied all the statements that he had admitted shooting Wilson, except that when he was arrested at the point of a pistol held by Finney Compton, Wilson's close friend, he admitted it in fear that he would be shot if he did not.

Several witnesses introduced in behalf of defendant testified that while the men were scuffling on the ground Finney Compton, a soldier at home on furlough, pulled his pistol from his belt and fired at the two men intending to shoot the defendant but striking Wilson. Most of these witnesses say that they saw smoke coming from Compton's pistol at the moment, and upon this base their statements that he was the one who fired.

Under the conflicting evidence the court, of course, properly submitted the case to the jury to have it determine which set of witnesses should be believed. This was done under apt instructions as to murder, manslaughter, self-defense, and reasonable doubt. The court, however, failed to submit an instruction on accidental and unintentional killing. The defendant having testified that he had hold of the cylinder or barrel of the pistol during the scuffle for its possession and after deceased had drawn it at the time the shots were fired, his evidence was sufficient to justify such an instruction; he testifying also that he did not know who fired the shot or whether it was actually fired from that pistol. Eastridge v. Commonwealth, 195 Ky. 126, 241 S. W. 806; Crum v. Commonwealth, 196 Ky. 802, 245 S. W. 501. The instruction should embody the principles stated in those cases, and in Long v. Commonwealth (Ky.) 112 S. W. 841, in which the facts are quite similar to those in this case. It might be patterned after the latter part of the instruction laid down in Smith v. Commonwealth, 133 Ky. 532, 118 S. W. 368.

By agreement that a portion of an affidavit of the defendant should be read as the deposition of two absent witnesses, it was placed before the jury in this manner that the deceased, Wilson, had stated that Finney Compton shot him. This evidence having thus been heard by the jury, the court permitted the commonwealth to show that after making such statements Wilson was informed that Compton had not shot him, and he later made statements to the effect that the defendant (Romans) had shot him. In the interest of fair play the court permitted the defendant then to introduce other witnesses who testified that Wilson had several times stated that Compton and not the accused had shot him. The evidence having crept in in the first place in the manner stated, we think the court properly let the whole matter go before the jury for what it was worth. Only one of the statements of the deceased would appear to have been made under a sense of impending dissolution. Upon another trial all of this evidence will be omitted unless the commonwealth can introduce a competent statement of the deceased made as a dying declaration. If this should be done, then in the interest of fairness to the defendant he ought to be permitted to show that the deceased made the contradictory statements as above given. Tolliver v. Commonwealth, 161 Ky. 81, 170 S. W. 515. The evidence of the actions of Burl Good after the defendant had run away should also be omitted, as it has no bearing on the guilt or innocence of the accused.

The judgment is reversed and remanded for a new trial.