# Dorroh v. Commonwealth.

(Decided November 14, 1930.)

JOHN S. FULLERTON for appellant.

J. W. CAMMACK, Attorney General, and DOUGLAS C. VEST for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

Dr. H. C. Dorroh seeks by this appeal to reverse a judgment imposing upon him two years' confinement in

the penitentiary for the death of Bessie Kouns resulting from an alleged criminal abortion.

On Saturday, April 14, 1928, Dr. T. D. Goodman was called to see Bessie Kouns. He found her suffering great pain with considerable swelling and tenderness in lower abdominal region. He saw her again on the 15th, 16th, and 17th; her condition was not responding to treatment, and on the latter date she was at his suggestion taken to the Stephenson Hospital in Ashland, Ky. Her condition did not improve, and on April 24th the peritonitic condition of her abdomen had become such that her bowels had become plastic and an immediate operation was imperative to relieve her of resulting intestinal obstruction. She was fully aware she would probably die, and Dr. Stephenson testified:

"She told me that she wanted to make a statement of those facts before we operated her. . . . Did she or not at that time say that she believed she was going to die? Yes. . . . Tell the jury what she said at that time about how Doctor Dorroh performed this operation on her. . . . She said that she went to Doctor Dorroh's office about 7:00 o'clock, I believe, on Saturday evening, and that Doctor Dorroh was drinking and didn't recognize her, and that she had to remind him of an engagement she had with him to open her womb at that time, and she said that he swore and told her to get on the table, and that she did, and that when she got on the table, he started to get ready to use an instrument and dropped that instrument on the floor and picked it up and stuck it in her uterus and nearly killed her."

A stenographer was sent for and deceased made a statement, attributing her condition then to the act of Dr. Dorroh. On Tuesday, May 1, 1928, Bessie Kouns died.

Dr. Dorroh, when testifying in his own behalf, said Bessie Kouns visited him professionally in February, 1928, that she was suffering then from gonorrhea, and he treated her therefor and discharged her as cured on March 18, 1928. He denied doing anything to her to produce an abortion, or that he even knew she was pregnant. He testified in detail about the treatment given her for gonorrhea, said that was the proper treatment

therefor, and that this treatment or the disease itself might produce an abortion. All the physicians who testify seem to regard the treatment used as a proper one for gonorrhea, but they were about equally divided upon whether it or the disease it was used for would themselves produce an abortion. He proved by Thelma Watson, an assistant in his office, that Bessie Kouns came there several times and was treated by Dr. Dorroh in his office. He proved by Richard Ratliff that Bessie Kouns told him she had the gonorrhea. The court later and properly sustained an objection to this evidence but did not withdraw it from the jury. The record contains this:

"Mrs. Otie Miller and Mrs. Blevins, had been subpoenaed as witnesses and failed to answer, and it is agreed between the commonwealth and the defendant that these witnesses, if present, would testify that some days before Bessie Kouns was taken to the hospital, they met her upon one of the public streets of the city of Ashland and that she told them she was in a pregnant condition and had attempted to perform an abortion by the use of a lead pencil and that she was suffering greatly from it. The court sustains the objection of the commonwealth as to the competency of said testimony and holds that it is not competent, to which ruling the defendant excepts."

### Grounds Urged for Reversal.

His first attack is directed to the indictment, but it follows the language of the statute, contains all necessary allegations, and meets the requirements of sections 122 and 124 of the Criminal Code of Practice. See Commonwealth v. Allen, 191 Ky. 624, 231 S. W. 41.

### The Venue.

He contends the commonwealth failed to prove the venue by failing to show this crime was committed in Boyd county, but he is mistaken. Miss Kouns' dying statement shows this was done at the office of Dr. Dorroh, which was shown to be on Winchester avenue, in Ashland, Boyd county, Ky.

EVIDENCE EXCLUDED.

The court erred in excluding the offered evidence of Mrs. Miller and Mrs. Blevins quoted above. This is taken with approval from 1 R. C. L. p. 548, sec. 97:

"The dying declaration of a person is simply a part of the evidence. It is not regarded in law as more sacred than the testimony of a witness, to say the least of it. It is subject to discredit and impeachment by any competent testimony which impairs its value. The rule is general that the credit of a witness may be impeached by proof that he made statements contrary to what he has testified to."

"There is, it is true, a condition to the rule with reference to verbal statements, that the attention of the witness must be previously called to the particular occasion and circumstances under which the supposed contradictory statements were made, in order to give him an opportunity of making any explanation of the matter which he may have. But this preliminary condition, it is clear, cannot be complied with when dying declarations are offered in evidence, except in the very rare cases. Such declarations are generally made to the physician or friends of the declarant in the absence of the party against whom they are offered, who of course has no opportunity of cross-examination or of directing the attention of the declarant to any alleged contradictory statements made by him. There would be no justice therefore in any rule which would deprive the accused of the right to impeach the credit of the declarant by proof of his having made contradictory statements as to the homicide and its cause. . . . And in a prosecution for abortion where dying declarations are admissible, the jury may consider the fact that the declarant by her own admission used the instrument furnished her by the defendant for the purpose of producing the abortion. . . . The dying declaration may be discredited by any testimony which would be permissible to discredit the testimony of the declarant, were he in court testifying." .

To the same effect, see 30 C. J. p. 280 sec. 522; Tolliver v. Commonwealth, 161 Ky. 81, 170 S. W. 515; Romans

v. Commonwealth, 231 Ky. 487, 21 S. W. (2d) 797; Ratcliffe v. Commonwealth, 231 Ky. 337, 21 S. W. (2d) 441; Colson v. Commonwealth, 200 Ky. 402, 255 S. W. 60.

### Misconduct of the Jury.

He says the jury was allowed to separate and the members were not kept together, but there is nothing in the bill of exceptions to show that, hence it is unavailable.

### Peremptory Instruction.

He earnestly contends the jury should have been peremptorily told to find him not guilty, and bottoms his argument upon the fact that the only evidence against him is the dying declaration of Miss Kouns. This declaration he contends was not shown to have been given under such circumstances as required to make it admissible.

We have already noted what Dr. Stephenson said about these circumstances, so we need not repeat that. Mr. Watt M. Prichard was present when it was given, and this is taken from his evidence:

"She said that she was going to die, she didn't have any hope of living. She said she wanted to make a statement."

Dr. Goodman, the family physician, testified:

"When I would enter her room, she would grab my hand and say, Doctor, I know I am going to die. Now tell me the truth. She would repeatedly say that she knew she was going to die. I don't believe that anything that could have been said or done would have given this girl a hope in her own mind. She was stoutly proclaiming all the time that she knew she was going to die."

It is argued that because she submitted to an operation immediately after making this statement, it must be inferred from that she had not abandoned all hope of recovery when it was made, but dying statements made by men about to undergo operations were admitted in cases of Fuson v. Commonwealth, 230 Ky. 761, 20 S. W. (2d) 742, and Stephens v. Commonwealth, 226 Ky. 437,

11 S. W. (2d) 111. This, which is taken from 30 C. J. p. 267, is an answer to his contention:

> "The bare circumstance that declarant consents to an operation or to removal to a sanitarium for the satisfaction of his family does not necessarily indicate hope of recovery."

### TIME OF MAKING DECLARATION.

It is urged this dying declaration should not have been admitted because Miss Kouns did not die for a week thereafter, but in Jackson v. Commonwealth, 189 Ky. 68, 224 S. W. 649 650, we said:

> "The test of admissibility as a dying declaration is that the statement was made under a consciousness of impending death, and this may be determined not only by what decedent said, but also by his evident danger and by all the surrounding circumstances. . . . The mere fact that 27 days intervened before death would not, as urged by counsel for defendant, necessarily render it incompetent. . . . The length of the time which elapsed between the declaration and the death of the declarant furnishes no rule for the admission or rejection of the evidence, though in the absence of better testimony it may serve as one of the exponents of the deceased's belief that this dissolution was or was not impending. It is the impression of almost immediate dissolution, and not the rapid succession of death, in point of fact, that renders the testimony admissible."

### THE DECLARATION AS A WHOLE.

Some immaterial parts of this declaration should perhaps have been stricken, had there been objection to admission of specific parts of it; but such objections were not made. All the objections interposed were directed to the declaration as a whole, and not to specific parts. This question is discussed in Meade v. Commonwealth, 225 Ky. 177, 7 S. W. (2d) 1052, 1055, where we quoted with approval this from 18 C. J. 878:

> "An objection to evidence as a whole is properly overruled where part of it is competent; the

duty of separating the incompetent from the competent devolves on counsel and not on the court, and an objection to a volume of testimony must specifically point out the portion claimed to be incompetent."

Questions made on motion for new trial, not discussed in brief, are waived.

For reasons indicated, the judgment is reversed.

Whole court sitting.