## Lassiter v. Commonwealth.

(Decided May 23, 1933.)

J. H. COLEMAN for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

Elbert Lassiter stands convicted of the crime of manslaughter, and from the judgment sentencing him to confinement in the penitentiary for two years he has appealed.

The indictment charged him with the murder of his father-in-law, Halley Garner. The first ground urged for a reversal is the alleged error of the trial court in overruling the demurrer to the indictment. The caption of the indictment is "Commonwealth of Kentucky v. Elbert Lassiter," and in both the accusatory and descriptive parts of the indictment the accused is referred to by his christian name, Elbert, but the name Lassiter nowhere appears in the body of the indictment. It is insisted that the failure of the indictment to state the surname of the accused renders it fatally defective.

In Commonwealth v. Ford, 12 Ky. Law Rep. 507, a superior court case, the indictment charged "Mose" of an offense. A bench warrant issued against Mose Ford. It was held that the failure of the indictment to state the defendant's full name was not ground for demurrer.

In Commonwealth v. Kelcher, 3 Metc. 484, the accused was indicted by the name of Mrs. Kelcher and she was summoned by that name. The lower court sustained a demurrer to the indictment because her first, or christian, name was not stated therein. It was held

that the omission of the Christian name in the indictment did not render it demurrable, and the judgment was reversed.

In Commonwealth v. Jenkins, 115 Ky. 62, 72 S. W. 363, 24 Ky. Law Rep. 1881, Jeff Jenkins was indicted under the name of Albert Jenkins. There was an Albert Jenkins in the county and he was first arrested by mistake. On motion of the commonwealth's attorney an order was entered changing the name on the indictment from Albert Jenkins to Jeff Jenkins, and it was held that this was permissible under section 125 of the Criminal Code of Practice.

In Elkins v. Commonwealth, 244 Ky. 583, 51 S. W. (2d) 916, Arnold Elkins and Kelly Shackelford were indicted for the crime of manslaughter. Their names appeared in the accusatory part of the indictment but not in the descriptive part, but they were referred to in the descriptive part as "the said defendants," and it was held that this plainly referred to the defendants named in the accusatory part, and the appellant could not have been misled by the failure to rename him in the descriptive part of the indictment, and, coupled with whatever judgment might be entered upon it, the indictment sufficiently identified the accused so as to make available to him a plea of former conviction or acquittal should he thereafter have occasion to make use of it.

In Romans v. Commonwealth, 231 Ky. 487, 21 S. W. (2d) 797, the name of the county appeared in the caption and the accusatory part of the indictment, but in the descriptive part the county was referred to as "the said county of ———." This was sufficient to render the indictment direct and certain as to the county in which the offense was committed.

The caption is a necessary part of the indictment. Section 122 of the Criminal Code of Practice provides in part:

"The indictment must contain—1. The title of the prosecution, specifying the name of the court in which the indictment is presented and the names of the parties."

This the present indictment did. It informed the appellant of the nature of the crime, and that he was the one accused of its commission. He could not have been

misled by the failure to restate his surname in the accusatory and descriptive parts of the indictment.

Appellant's contention that he was entitled to a directed verdict in his favor requires a brief statement of the facts. Halley Garner was a widower and lived with his five children, the oldest of whom, Nora Lee Garner, was sixteen years of age. Appellant had married an older sister of Nora Lee Garner and lived about 300 yards from the home of his father-in-law. Rufe Garner, a brother-in-law of decedent, lived about the same distance from decedent's home. On the evening before the homicide decedent and his children had gone to the home of Rufe Garner to spend the night. About 10 o'clock that night Nora Lee Garner told her uncle, Rufe Garner, and her brother-in-law, the appellant, that her father had been having sexual intercourse with her for more than a year, and that she did not intend to submit to his mistreatment longer and would not return to his home. Appellant and Rufe Garner informed the decedent of the charge made against him by his daughter and he became enraged and left, threatening to return and kill all of them. He did not return that night, and on the following morning appellant and Rufe Garner went to his home and told him that his daughter would take no steps to have him prosecuted if he would leave the community, but that if he failed to leave she would procure a warrant for his arrest. He asked permission to talk with her which was granted, and he went to Rufe Garner's home and tried to persuade his daughter to return home with him, but she refused. He then left threatening to return and kill her. In a short time he did return armed with a shotgun. Rufe Garner went out of the house twice and talked to the decedent and tried to persuade him to leave. Appellant's wife went to her home a short distance away and returned with a pistol which she handed to her husband. Armed with the pistol he opened the door and stepped outside.

Up to this point there is no dispute in the testimony. Appellant claims that he went out to request the decedent to leave peaceably, and that as he opened the door the decedent drew the shotgun on him and he then shot the decedent in his necessary self-defense. His version of what occurred at the time of the shooting is corroborated by the testimony of Rufe Garner and Nora Lee Garner. Wade Oliver, a witness for the common-

wealth, testified that he was at the Rufe Garner home when Halley Garner appeared armed with a shotgun. The witness left and walked down the road about 150 yards before the shooting. At the time of the shooting he was looking in the direction of the Rufe Garner house and saw Halley Garner standing a few steps from the door holding the shotgun but making no demonstration with it. Some one fired a shot from the door and the decedent fell. Decedent's eleven year old son, Paul Garner, who was some distance away, testified to substantially the same facts. If the testimony of these witnesses is true, the decedent, when he was shot, was making no hostile demonstration toward appellant and appellant did not shoot in his necessary self-defense.

While the great weight of evidence tends to support appellant's claim that he acted in his necessary self-defense, there was sufficient conflict in the evidence on this point to warrant the submission of the case to the jury and to sustain its verdict.

One of the grounds relied on for a new trial was the alleged misconduct of one of the jury, and in support of this ground the affidavits of two jurors were filed in which the affiants stated that, during the deliberation in the jury room, E. W. Lovens, a member of the jury, said, ''I know more about this case than you do,'' or words to that effect. It does not appear from the affidavits that the alleged statement had any bearing on the result reached by the jury, but, aside from that, it is a well-settled rule that the testimony of jurors is not admissible to impeach their verdict. Irvine v. Greenway, 220 Ky. 388, 295 S. W. 445; Rager v. L. & N. R. R. Company, 137 Ky. 811, 127 S. W. 155.

Appellant filed the affidavits of several persons in support of the ground of newly discovered evidence relied upon for a new trial. Ben Culpepper stated in his affidavit, in substance, that he saw the decedent on the morning that he was killed, and that he said he was going to kill the appellant or get killed. He was then on his way to Rufe Garner's home armed with a shotgun. This evidence is merely cumulative, since a number of witnesses testified to substantially the same character of threats made by the decedent on the morning he was killed. Taylor Buchanan was introduced as a witness in rebuttal by the commonwealth and testified

to a statement made by the appellant about Nora Lee Garner which indicated that he considered her unchaste. The affidavits of four persons were filed in which the affiants stated, in substance, that Taylor Buchanan had said in their presence that persons interested in the prosecution of appellant had asked him to testify that appellant had made such a statement to him, but that he had refused to do so because no such statement had been made. The testimony of Buchanan was about a collateral matter and the testimony of the newly discovered witnesses was merely impeaching in its nature. It is well settled that newly discovered evidence of such character is not sufficient to authorize the granting of a new trial unless it impeaches the only material witness in the case. Bates v. Commonwealth, 226 Ky. 318, 10 S. W. (2d) 1099; Jones v. Commonwealth, 238 Ky. 453, 38 S. W. (2d) 251. Where newly discovered evidence that is only impeaching in its nature affects the evidence of the sole witness upon whose testimony the conviction was necessarily had, or when the newly discovered evidence is of such a nature that unexplained it probably would have induced the jury to reach a different conclusion, a new trial will be granted. Hensley v. Commonwealth, 241 Ky. 367, 43 S. W. (2d) 996. The present case, however, does not fall within this exception to the general rule.

Appellant complains because the trial court failed to instruct the jury on his right to shoot in defense of Rufe Garner and Nora Lee Garner. The evidence fails to show, however, that he believed, or had reason to believe, that either of them was in danger of death or some great bodily harm at the time he shot decedent. He testified that as he stepped out of the door the decedent turned the gun on him, and that he shot to protect himself. While the preponderance of the evidence supports appellant's theory of the case, there was some evidence tending to support the commonwealth's theory that appellant did not kill the decedent in his necessary self-defense, and we find no error in the record that would authorize a reversal of the judgment.

The judgment is affirmed.

The whole court sitting.