## White v. Commonwealth.

(Decided Oct. 1, 1935.)

C. A. NOBLE, F. J. EVERSOLE and J. E. JOHNSON for appellant. .

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY— Reversing.

Jacie White appeals from a judgment convicting him of manslaughter, and fixing his punishment at five years' imprisonment.

The homicide occurred about 10:30 p. m. on May 5, 1933, in the vicinity of Coneva schoolhouse in Perry county. A revival meeting was in progress at the Coneva Coal Company camp. Chester Smith, a deputy

sheriff of Perry county, was requested to attend the meetings and preserve the peace, and he deputized appellant, Jacie White, to assist him. During the meeting the deceased, George Vires, and others associated with him, all of whom had been drinking, began singing on the outside of the building, and Smith and appellant requested him not to disturb the services. Smith and appellant then returned to the house and remained there until a shot was fired on the outside. They then went forth and arrested the deceased and took his pistol, but upon the suggestion of some one they placed him in charge of Dan Baker, with the understanding that the deceased was to go home and appear in court the next morning. After the officers left, the deceased refused to go home, stating that he would rather be put in jail than go home at that time. He also said:

"That made the third time he had been treated that way, and he would kill Jesus Christ before he would be treated that way."

The deceased lived below where the services were being conducted, while the officers lived above. At the conclusion of the services some of the crowd went up the road and others down the road, but it seems that none of those going up the road saw the deceased in that direction. The officers remained at the place where the services were being conducted until the crowd scattered, and then started up the road in the direction of their homes, accompanied by Jack Smith, a son of Chester Smith. After going a few yards Jack Smith discovered some one hiding at the edge of the road and spoke of it to the others. Thereupon Chester Smith flashed his light upon the deceased, who said, "Take that light off me, I am going to kill you," and immediately fired at Chester, hitting him on the right hand. Appellant then fired three shots in quick succession, instantly killing the deceased. After the deceased was shot he was found lying down with his shotgun and a supply of shells nearby. The gun was cocked and had been reloaded. According to Dan Baker, who was about 100 yards below where the killing took place, only three shots were fired, and all sounded alike to him. Dan Farler also stated that only three shots were fired, but that Chester Smith's hand had been wounded and was bleeding. Omar Sandlin heard three or four shots, and they all sounded alike to him. Ollie Bush saw Merida

Begley break the gun and take the cartridge from it. The gun was loaded. There were three more cartridges lying by the left hand of the deceased. She remembered hearing three shots fired at the time of the killing, but heard one other shot about an hour before the killing. It seemed to her as though there were two different sounds. According to Clarissa Combs, three shots were fired, of which two were just alike and one a little different. She saw the shotgun, and while she was there Merida Begley picked it up, broke it, and took the cartridges out. She did not hear any shotgun fire. If a shotgun had been fired, it did not sound like a shotgun. It had a keen shot. Tom Vires, father of the deceased, testified as to the condition of the place of the homicide when he saw it the next morning, and to the fact that it had been covered over when he saw it about an hour and a half later. For the purpose of contradicting the witness, Chester Smith, Tom Vires, and his son, Charlie Vires, were permitted to testify that Chester stated to them in substance as they were going to Eversole creek that he flashed his light on George Vires and Jacie White fired immediately and at a time when George was going from him, and that after Jacie killed him Jacie started to run away, and he made Jacie come back with his pistol. At the same time the court admonished the jury that this evidence was not admissible against Jacie White.

The first question for consideration is whether the verdict is flagrantly against the evidence. On the one hand, we have the following: The deceased was arrested by Chester Smith and appellant, who had been deputized to assist him, for disturbing religious worship, and his pistol taken from him. Instead of taking the deceased to jail, they placed him in charge of Dan Baker, with the understanding that he was to go home and appear in court the next morning. The deceased became very angry, refused to go home, and stated that he would kill Jesus Christ before he would be treated that way. Some time later the deceased armed himself with a shotgun and went up the road where it was probable that appellant and Chester Smith would pass. The only eyewitness testified to facts showing that the deceased was lying in wait and was the aggressor, and that appellant shot only after Chester Smith had been fired upon and had been wounded, and solely for the

purpose of protecting Chester Smith and himself against great bodily harm. The only contradiction of this evidence is the statement of two or three witnesses that they heard only three shots, and none of them sounded like a shotgun. When all the evidence is considered in the light of the conduct and hostile attitude of the deceased, and the fact that no motive for the homicide on the part of appellant was shown, we are constrained to the view that the verdict is flagrantly against the evidence.

The court did not err in permitting Tom Vires and his son, Charlie Vires, to testify that the witness, Chester Smith, made statements different from his testimony on the trial. That method of impeaching a witness is authorized by section 597, Civil Code Prac., which also applies to criminal cases, Bentley v. Commonwealth, 200 Ky. 246, 254 S. W. 752, where, as here, the evidence is relevant and not collateral, and the witness sought to be impeached has been inquired of concerning the statement, with the circumstances of time and place and persons present, section 598, Civil Code Prac., and the court admonishes the jury that the evidence is admitted solely for the purpose of contradicting the witness, and cannot be considered as substantive evidence against the accused. Hayden v. Commonwealth, 140 Ky. 634, 131 S. W. 521; Slone v. Commonwealth, 110 S. W. 235, 33 Ky. Law Rep. 266; Dorroh v. Commonwealth, 236 Ky. 68, 32 S. W. (2d) 550.

It was not error to permit the witness, Tom Vires, to testify to the physical conditions of the place of the homicide, but in the course of his testimony he expressed certain conclusions which will be excluded on another trial.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.