## Cole v. Commonwealth.

(Decided Oct. 18, 1935.)

E. B. GABBARD for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

Appellant, Charlie Cole, appeals from a judgment of conviction sentencing him to four years' confinement in the penitentiary for the crime of voluntary manslaughter. On the night of January 25, 1934, Birch Anglin was shot by the appellant. On the night of the homicide decedent and Ambrose Barrett went to a dance at the home of Jake Ramey. The testimony indicates that decedent had been drinking and probably continued to drink throughout the evening. Appellant was also present at the dance, but there is nothing in the record to show that an actual difficulty arose there, although there is testimony to the effect that appellant was warned at the dance to be on the lookout for trouble from Anglin. After the dance was over, Anglin and Barrett went to the home of Barrett's father, passing the home of the appellant on the way. After staying there about fifteen minutes, they left and started to return to Barrett's home, again passing appellant's home. Anglin rode up to the door of appellant's house, as they passed, and advised appellant's mother-in-law that appellant was at the dance and would be home later. As Anglin and Barrett proceeded on toward Barrett's home, they met appellant returning to his home from the dance. They all stopped, and decedent said to appellant: "Well, I have been out there and told your woman about your dancing with the women." Appellant replied that he did not care what decedent told and that it was nobody's business what he did. Thereupon,

an argument ensued, in which decedent brought up various complaints he had apparently nurtured for some time against appellant, and finally invited him to get off his mule and fight it out. Appellant said he did not want to fight, whereupon decedent, who had dismounted from his mule, cursed appellant and grabbed an axe from appellant's hand. Barrett here took the axe from decedent and threw it on the ground. Anglin then said to appellant: "Get down off the mule and let's fight it out," cursing him and pulling at his leg. Thereupon, appellant dismounted, drawing his pistol as he did so, and shot Anglin in the right side, at about the level of the ninth rib, the bullet ranging downward and coming out on the left side. Anglin was taken to a hospital at Berea, where he died the following evening, after having subscribed and sworn to a written dying declaration, which was admitted in evidence at the trial.

Appellant complains that the court erred in the admission of the dying declaration, and argues that it was not shown that the declaration was made under a sense of impending death. It was shown, however, by the testimony of witnesses who were present when the declaration was made that the decedent realized that his wound was mortal, that he must soon die, and that there was no hope for his recovery. Indeed, the declaration itself so states. We are of the opinion that the declaration was properly admitted.

After the dying declaration was admitted, appellant sought to introduce evidence that the decedent had previously been convicted of a felony. The court excluded this evidence from the jury, and appellant complains of this ruling. Section 597 of the Civil Code of Practice (applicable alike to criminal prosecutions—Patterson v. Commonwealth, 252 Ky. 285, 66 S. W. (2d) 513; Bolin v. Commonwealth, 206 Ky. 608, 268 S. W. 306) provides that a witness may not be impeached by evidence of particular wrongful acts, but that it may be shown by examination of a witness, or record of the judgment, that he has been convicted of a felony. No reason is apparent why this rule should not apply to a dying declaration in the same manner as to the testimony of any other witness actually present at the trial. A dying declaration, while in the nature of secondary evidence, is a part of the evidence and, to say the least, is no more sacred than the testimony of a wit-

ness. It has repeatedly been held that evidence of other contradictory statements is admissible to discredit a dying declaration. Dorroh v. Commonwealth, 236 Ky. 68, 32 S. W. (2d) 550; Blackerby v. Commonwealth, 200 Ky. 832, 255 S. W. 824; Colson v. Commonwealth, 200 Ky. 402, 255 S. W. 60; Tolliver v. Commonwealth, 161 Ky. 81, 170 S. W. 515; Allen v. Commonwealth, 134 Ky. 110, 119 S. W. 795, 20 Ann. Cas. 884. Clearly, if conviction of a felony tends to impeach the credit of a witness present at the trial, subject to cross-examination, and is admissible for that purpose, it should likewise impeach the credit of a person making a dying declaration. Furthermore, since the accused cannot test the credibility of the decedent by a searching cross-examination in the presence of a jury, there is even a stronger reason for permitting the kind of impeachment here attempted. In the few cases where the question has arisen, the courts seem uniformly to have permitted the introduction of evidence of the conviction of the decedent of a felony to discredit a dying declaration. Liddell v. State, 18 Okl. Cr. 87, 193 P. 52, 16 A. L. R. 405, and note. See, also, 1 R. C. L. 548; Couch v. State, 93 Tex. Cr. R. 27, 245 S W. 692, 25 A. L. R. 1359; Marshall v. State, 219 Ala. 83, 121 So. 72, 63 A. L. R. 560. A felon was at common law disqualified from giving testimony in a court of justice, and it was early held in England that the dying declarations of a felon were, by the same token, inadmissible in evidence. Rex v. Drummond (1784) 1 Leach, Cr. Cas. 337, 1 East, P. C. 353. Although a felon is no longer prohibited from testifying in our courts, the same rule which at common law so attainted him that he could not testify at all should certainly apply to the extent that the jury be permitted to know of the conviction in order properly to weigh the credibility of his evidence. In the case of Martin v. Commonwealth, 78 S. W. 1104, 25 Ky. Law Rep. 1928, the opinion shows that evidence of previous conviction of a felony was admitted without objection for the purpose of discrediting a dying declaration. The court apparently considered it as legitimate impeaching testimony. It seems clear that the same rules permitting the impeachment of an ordinary witness should and do permit the impeachment of dying declarations. We conclude, therefore, that the trial court erred in excluding this testimony from the consideration of the jury. The error was certainly

material, for the dying declaration was the only evidence that tended to show appellant as the aggressor in the dispute.

The judgment is reversed for proceedings consistent herewith.