JUDGE PRYOR
delivered the opinion oe the court.
Murty O’Brian was indicted by a grand jury of tbe county of Hickman, on tbe 27th of March, 1872, for the murder of Tim Hogan. He appeared in answer to tbe charge, pleaded not guilty, and also filed a special plea, that of former jeopardy; the trial resulting in a verdict of guilty, and a judgment thereon sentencing him to be hanged. This appeal is from *335 that judgment. The accused complains of many errors committed to his prejudice during the progress of the trial in the court below, the most of which are deemed merely technical, and we will therefore proceed to the consideration of the grave and important question involved in the case. It seems that the accused had been indicted for the same offense by a grand jury of the same county in the year 1868, and upon his ap-' pearing to answer the charge pleaded not guilty, and a jury was selected and sworn in accordance with the law, and the accused legally and regularly put upon his trial. Witnesses were introduced on the part of the commonwealth whose testimony conduced to connect the accused with the killing of Hogan, and while a witness was being examined by the prosecution. one of the jurors (Spilman) announced from the jury-box that he was a member of the grand jury that had found and returned into court the indictment upon which the prosecution was based; and thereupon the court, of its own motion and against the objections of the accused, and his counsel, discharged this juror, and had another summoned in his stead. The trial then progressed, resulting in a verdict of guilty. The case was brought to this court and reversed, and upon its return to the lower court, the indictment having become mutilated, a new indictment was found, the same under which this conviction was had, and to which the special plea was filed, containing in substance the facts above recited. These facts are all made to appear in the present record, the bill of evidence on the former trial forming a part of the bill of evidence in this case. There is no controversy, however, between the attorney for the state and the counsel for the accused as to the existence of the facts constituting the defense relied on.
It is now insisted that the accused had the right to demand that the trial under the indictment found in 1868 should have progressed, and the court had no power, without his consent and against his objection, at its mere will to discharge the *336 jury, thereby preventing them from making a deliverance between him and the commonwealth; and he is for that reason entitled to an acquittal.
An instruction containing, in substance, this view of the case was offered by counsel for the defense and refused by the court, to which exceptions were properly taken, and the question now presented is, should this instruction have been given to the jury? There is much diversity of opinion among judges as to the power of a court at its discretion to discharge a jury, during the progress of the trial, in a criminal case where the punishment is death. The ancient common-law doctrine on this subject was to refuse to discharge the jury in such a case even with the consent of the prisoner; but this doctrine was discarded by many of the earlier English judges as unreasonable, and the jury permitted to be discharged in cases of absolute necessity.
Lord Hale said that if the prisoner after his plea' and before trial becomes insane, he shall not be tried; and if after trial he becomes insane, he shall not receive judgment; and in a case where a juror fell down with a fit it ivas held that the jury was properly discharged. (1 Hale, 34; 2 Hale, 295.)
The discretionary power of courts over juries in capital cases has been greatly enlarged in many of the states of the Union, and in some it is held that while judges must be extremely cautious in interfering with the chances of life in favor of the prisoner, still in the exercise of their discretion they have the right to discharge the jury, and the only security the prisoner has is in the conscientious exercise of this power and the responsibility of the judges under their oaths. That courts have the power to discharge juries in criminal causes Avhere the accused is even charged Avith a capital offense, and that without the prisoner’s consent, is now too well settled to be doubted; but whether the exercise of this power is to be determined at the mere will of the judge, or only in cases *337 of absolute and extreme necessity, is a question in regard to which we find many conflicting authorities.
Section 211 of the Criminal Code provides that a challenge for implied bias may be taken where the juror was a member of the grand jury that found the indictment, but in no wise disqualifies him unless challenged by the parties to the indictment. When the fact is disclosed showing this implied bias, if the accused fails to object or ask a discharge of the jury, it is a waiver of his right, and, as decided by this court in the case of Fitzpatrick against Norris, he can not afterward for this cause avoid the verdict or obtain a new trial. The accused, hpwever, in this case, after having once accepted the juror, was still willing to be tried by him, and protested against the action on the part of the court in discharging him by excepting to the ruling; and the court, disregarding his objections, required the trial to progress after the substitution of another juror.
Section 248 of the Criminal Code provides “that if after retirement one of the jurors becomes so sick as to prevent a continuance of his duty, or other accident or cause occur preventing them being kept together, or if after being kept together such a length of time as the court deems proper they do not agree on a verdict, and it satisfactorily appears that there is no probability they can agree, the court may discharge the jury.”
Section 249 provides “that in all casés where a jury is discharged, either in the progress of the trial or after the cause is submitted to them, the same may be again tried at the same or another term of the court.”
It could not have been intended by the section supra (248) that the power of the court to discharge a jury in cases of necessity is restricted to the causes enumerated in that section; if so, all other causes arising during the progress of the trial showing a clear and manifest necessity for the discharge *338 of the jury must be disregarded. This section of the Code, in our opinion, was not intended to define all the causes upon the happening of which this power could be exercised, but was only intended as an adoption of the legal rule that a case of actual necessity must exist before a jury can be discharged.
Section 249 was intended to apply to such cases as are mentioned in section 248, and has direct reference to the latter section; but giving to section 249 of the Code its most comprehensive meaning, and placing this right to discharge a jury by its provisions at the sole discretion of the judge, it is still argued that its exercise without any legal necessity is an infringement upon the constitutional rights of the citizen. The accused had the right, under the constitution and laws of the state, to a fair and impartial trial of his case by a jury of twelve men, selected and sworn according to law, and when thus selected and chosen by him it was their province to render and his right to demand a verdict as to his guilt or innocence of the offense charged. The withdrawal of the juror Spilman, against his objection, terminated the legal existence of the jury sworn to try the issue between him and the commonwealth, a jury to whom he had been delivered in charge, and at whose hands he had the legal right to expect a safe deliverance. There was certainly no legal reason or necessity for discharging Spilman from the jury. He was a competent juror, although a member of the grand jury that returned the indictment into court. He had been accepted by both the commonwealth and the accused, • and nothing but his death, sickness, or some accident preventing his continuance on duty, authorized the court without the consent of the accused to say that he should no longer constitute one of the panel. What the verdict of the jury might have been with Spilman upon it is left altogether to conjecture; yet the accused was entitled to a verdict from him in conjunction with his fellow-jurors, and the court had no legal power to deprive him of this right. *339 Section 14 of article 13, state constitution, provides “that no person shall for the same offense be twice put in jeopardy of his life or limb”
A similar provision is also made part of the Federal Constitution and that of almost every state in the Union. The right of trial by jury is of but little value to the citizen in a criminal prosecution against him if this provision of the constitution can be violated and the accused left without remedy. If the judge can arbitrarily discharge and impanel juries until one is obtained that will render such a verdict as the state demands, or the attorney for the prosecution desires, and the only protection against such oppression is that a new trial may be ordered in the court trying him, or by the court of last resort, then of what value is this boasted right ? It will not do to say to the accused that his only protection is in the sound discretion of the judge, or in the responsibilities assumed by him in taking the oath of office. As remarked by Justice Tilghman in the case of the Commonwealth v. Cook (6 Sergeant & Rawle), “ In the state of purity and independence in which I verily believe the judiciary of the several states, as well as of the United States, at present stands, there might be no danger of oppression from the enjoyment of a very large discretionary power as to the discharge of juries; but other times may come, in which judges may abuse this discretion,” etc. Gibson, Justice, in the case of the Commonwealth v. Clue (3 Rawle, 488) said, “ Why should it be thought that the citizen has no other assurance than the arbitrary discretion of the magistrate for the enforcement of the constitutional principle which protects him from being twice put in jeopardy of life or member for the same offense, I am at a loss to imagine. If’ discretion is to be called in, there can be no remedy for the abuse of it but an interposition of the power to pardon, which is obnoxious to the very same objection. Surely every right secured by the constitution is guarded by *340 sanctions more imperative. A right which depends on the will of the magistrate is essentially no right at all, and for this reason the common law abhors the exercise of a discretion in matters that may be subjected to fixed and definite rules.”
While the integrity of the judiciary of this country has always been maintained, still we are satisfied the surest protec-, tion to the citizen when upon trial for a capital offense, upon such a state of fact as appears in this case, consists in the constitutional guaranty that he shall not be twice put in jeopardy of life or limb for the same offense. If the judge has the legal right to discharge 'the jury in a ease like this, he may also discharge it on account of the absence of a witness for the prosecution, or in every instance and as often as the testimony is deemed insufficient upon which to base a conviction, and subject the accused to the same mode of trial as pertains to every civil action.
It is, however, urged by the attorney for the state that the accused was not in jeopardy when the jury was discharged; and in order to have placed him in jeopardy so that he might be heard upon his special plea there must be shown a verdict or judgment of acquittal upon a previous indictment for the same offense. If the record must show a state of fact that would authorize the plea of autrefois acquit or ■ convict, then it follows that the same character of evidence is required to bar a prosecution upon an indictment for murder that must be shown in a common-law action determining the right of property, and the judge in either case empowered to discharge the jury whenever in his opinion the ends of justice require it. Such certainly can not be the meaning attached to this provision in the bill of rights. The word jeopardy means exposure to death, loss, hazard, danger, peril, etc., and where one is put upon his trial on a charge of murder before a jury sworn to decide the issue between the commonwealth and himself the accused is then exposed to the hazard and peril of his *341 life. In this ease the accused was willing to risk the chances with the jury he had selected, but the court below compelled him to assume the additional peril of being tried by another and different jury; and as said by Chitty in his treatise on Criminal Law, “ that to discharge a jury in a criminal case has one great inconvenience, that of bringing the prisoner’s life twice in jeopardy; and in the case of the Commonwealth v. Cook (6 Sergeant & Rawle) Justice Duncan says, “That when the jury are charged with a prisoner, where the offense is punishable by death, and the indictment is not defective, he is in jeopardy of his life, and the prisoner is entitled to say to the court, ‘ I have put myself on trial for life or death on these twelve men; I will not agree to be again put in jeopardy.’ ”
In the case of Dobbins v. The State (14 Ohio), where the accused claimed an acquittal by reason of the discharge of the jury upon their failure to agree, Attorney-general Critchfield for the state said, “ It is well settled that the plaintiff in error was put in jeopardy by the first trial if the court improperly discharged the jury. A verdict is not necessary either way to put a defendant in jeopardy, and being once jeopardized and not convicted it is an acquittal; but it is also well settled that the court can exercise a discretion and discharge a jury in cases of absolute necessity, and where there is no reasonable hope of the jury agreeing on a verdict.” And in the same case the learned judge, in delivering the opinion of the court, says, “It is perfectly well settled that if the state intervenes without a case of necessity and prevents a verdict, the.accused can not be subjected to a further trial consistently with the constitutional guarantee that he shall not be twice put in jeopardy for the same offense;” and the following cases are cited: Huley’s case, 6 Ohio; Mount v. The State, 14 Ohio; Prague v. The State, 3 Ohio; McKee’s, 1 Bailey, 657; People v. Goodwin, 18 Johnson; People v. Barrett, 2 Cain, etc. “ A *342 person is in legal jeopardy when he is put upon trial before a court of competent jurisdiction upon indictment or information which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance; and a jury is said to be thus charged when they have been impaneled and sworn. The defendant then becomes entitled to a verdict which shall constitute a bar to a new prosecution, and he can not be deprived of this bar by the entering of a nolle prosequi against his will, or by a discharge of the jury and continuance of the case.” (Cooley’s Constitutional Limitations, second edition, 326.)
In the case of the State v. McKee (1 Bailey, S. C.), O’Neal, Justice, delivering the opinion, makes this inquiry: “We ask what is meant by jeopardy of his life? It is where one is put upon his trial upon a valid indictment for a capital offense. It may result in his condemnation, and hence he is in jeopardy.” After reviewing many authorities the learned judge proceeds, “We are enabled to say that a jury after they are charged can be discharged, and the prisoner tried a second time for the following causes only: 1. The consent of the prisoner; 2. Illness of one of the jury, prisoner, or the court; 3. Absence of one of the jurymen; 4. The impossibility of agreeing on a verdict.” While it must be maintained that some cause should intervene that of necessity compels the discharge of the jury, still we think it quite difficult to designate all the causes that would legally justify such action on the part of the court, and can only reaffirm the principle embodied in all the cases referred to, and which, in our opinion, is also the doctrine of the common law, that every interference on the part of, the state, after the jury has charge of the prisoner, by which the accused is prevented from having a verdict declaring his guilt or innocence, unless upon facts clearly establishing a case of necessity or showing the prisoner’s consent, must operate as an acquittal, and this is the *343 only mode of preserving and maintaining the constitutional provision on the subject. - .
In 3 Wharton’s American Criminal Law (sec. 3128) it is said “an arbitrary discharge of the jury without sufficient reason relieves the defendant from a second trial.” And in the case of Stewart v. The State (15 Ohio St. Rep.), a case similar in many respects to the one before us, the juror was a member of the grand jury that found the indictment, and after the trial had begun so informed the court, when the judge inquired of the prisoner and his attorney if they objected to proceeding with the jury; the response was they did, and thereupon the court discharged the jury and had another impaneled. The prisoner claimed that having been once in jeopardy he was entitled to an acquittal, and upon an appeal, when this question was made, Scott, Justice, said, “At that stage of the proceeding (alluding to the announcement made by the juror) the accused had the right to demand such a disposition of the case either by verdict or otherwise as would bar another prosecution for the same crime; of this he could not be deprived at the will of the court by the entry of a nolle prosequi or the discharge of the jury without an absolute necessity therefor. Such action taken without his consent would operate as an acquittal, and be a bar to any further or subsequent prosecution for the same offense. To hold otherwise would be to contravene the constitutional guaranty against being twice put in jeopardy for the same offense.”
An acquittal, however, was denied for the reason that the accused had objected to being tried by the juror. If in the present case the attorney for the state, after the introduction of the testimony for the prosecution, had by leave of the court entered a nolle prosequi, is there any doubt but that it would have resulted in the prisoner’s acquittal? We think no jurist will assume that he could be again tried for that offense, and if so, must not the discharge of the jury by the court under *344 like circumstances have the same effect? It certainly would, and in either instance can be relied on as a complete bar to any subsequent prosecution for the same alleged crime.
It will be found upon a careful examination of all the authorities in conflict with the views here presented that the opinions have been delivered in almost every instance in cases of misdemeanors, where it is admitted the court, as in civil cases, can exercise a sound discretion in the discharge of the jury, and in cases involving the liberty of the accused the judgments affirming the action of the lower court in discharging juries have been rendered in cases showing an absolute necessity on the part of the court in ordering a new panel. There is no case to be found where the citizen has been placed upon trial for murder, and the jury discharged without his consent and without legal cause, where a doctrine contrary to the views herein expressed has been announced.
The opinion of Justice Washington (cited in 1 Wharton’s American Criminal Law, p. 580), although often quoted as sustaining the doctrine that the provision of the constitution in question does not apply to a jeopardy short of conviction, and that there is no difference between misdemeanors and capital' cases in respect to the discretion of the court in discharging juries, contains this language: “By reprobating this plea (former jeopardy) we do not deny to a prisoner the opportunity to avail himself of the improper discharge of the jury as equivalent to an acquittal.”
This court, in the case of the Commonwealth v. Olds, who was proceeded against in the county court for failing to list a billiard-table for taxation, in an opinion delivered in the year 1824, adjudged that nothing short of a final verdict or judgment could relieve a party from a second trial, and apply the argument as well to criminal proceedings as to misdemeanors ; and when the present case was here by appeal in 1869 the court adopted the former case of Olds as a precedent, adhering *345 to the principle therein stated. It is now insisted that the law of this case is settled by that opinion.
We are satisfied that nothing gives more strength to and confidence in the judiciary of the state than an adherence to well-established principles affecting either the rights of person or property, and in a civil case we would not hesitate to decide that the former adjudication settled forever the rights of the parties.
In the present case, although the question seems to have been well considered in rendering the former opinion, still the court was only urged to its consideration by the persistency of counsel when there had been no plea presenting the question to the court below, or even a motion made to discharge the prisoner. The accused had no opportunity to present his special plea until the return of the cause and the finding of the present indictment; and with such a plea, sustained by the facts as they appeared on the former appeal, we are satisfied this court would not have affirmed the judgment had there been no other cause of reversal. Conceding, however, that this question was properly before the court upon the former appeal, still no former adjudication gives to the state the right to take the life of the accused when he is entitled to an acquittal. The commonwealth is not in pursuit of victims, but desires to inflict punishment only in a legal and constitutional way upon the guilty.
The judgment of the court below is reversed; and as the verity of the record of the former trial is admitted by the state, the court below is directed to discharge Murty O’Brian from custody.
Judge Lindsay not sitting.