## Bush v. Commonwealth.

(Decided June 19, 1931.)

LEEBERN ALLEN, J. C. LINDON, and G. B. STAMPER for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for the Commonwealth.

OPINION OF CHIEF JUSTICE THOMAS—Affirming.

The appellant, Sterling Bush, was indicted by the grand jury of Wolfe County in which he was charged with maliciously shooting and wounding Kenneth Booth, an infant child of Orval Booth, but from which wounding the infant did not die, an offense created and punished by section 1166 of our present Statutes. At his trial, under his plea of not guilty, he was convicted and punished by confinement in the penitentiary for one year. His motion for a new trial was overruled, and from that order and the judgment pronounced on the verdict he prosecutes this appeal. His counsel in their brief filed in this court expressly abandon all alleged errors set

forth in the motion for a new trial (no doubt for the reason that none of them was well taken), except the failure of the court to give to the jury the whole law of the case; it being argued that under the evidence, given by defendant alone, it was the duty of the court, under the requirement that in criminal cases the whole law of the case should be given to the jury, to have said to it in legal and proper form that defendant was entitled to an acquittal if the shooting with which he was charged was accidentally done. For a proper understanding of that contention and of our conclusions concerning it, it will be necessary to make a substantial recitation of the testimony introduced at the trial.

Mrs. Orval Booth is a sister of Cliff Bush, but what relation, if any, they sustain to appellant is not disclosed by the record. On the morning of the day that Kenneth Booth was shot, appellant and Cliff Bush were together and the latter was in possession of some moonshine liquor contained in a coffee pot, of which they both participated at that time. Cliff Bush informed appellant that he was on his way to the home of his sister, Mrs. Booth, and that if appellant later in the day desired to satisfy his returned yearning for more liquor, he could do so by visiting the home of Mrs. Booth, at which place Cliff Bush expected to spend the day with his accumulated supply of moonshine. In due time appellant was seized with a returning thirst, and possessing a keen recollection he remembered the invitation of his earlier benefactor and proceeded to the Booth residence for the purpose of accepting it, and to participate in the hospitalities incident thereto.

The Booth dwelling was constructed on the side of a hill with one end considerably above the surface of the ground, and when appellant arrived there he found Cliff Bush asleep on the ground under the elevated end of that building and appellant endeavored to arouse him in which he partially succeeded; but at that juncture one Huffaker, a mutual friend of the two, appeared upon the scene and he informed appellant that the liquor was in the Booth residence and that Mrs. Booth would serve him any quantity he desired. He then repaired himself to the kitchen and proceeded to imbibe to his satisfaction. He then retired to the yard with Huffaker, or to the place where the latter had already gone. In the meantime Cliff Bush had completely awakened, and he then

exhibited some anger over the fact that appellant had disturbed his slumbers, which resulted in a fist fight between appellant and Cliff Bush, but with no serious results. However, appellant was greatly incensed at what he termed were the indignities thrust upon him, to say nothing about the slight corporal punishment he received, and after cursing and threatening to cut out the heart of Cliff Bush, he announced that he was going to his nearby home and get a shotgun "and kill every damned one of them." Making his threat good, he immediately started for his home and within a very short time he approached the Booth residence with his gun, and when he got near to its front he crouched behind a large rock and fired into the Booth residence, with the result that one of the shots wounded the infant victim. Some of the witnesses, including defendant, testified that Cliff Bush was located either in or near the door of the residence at the time the gun was fired, but, if true, it is not claimed that he made any such demonstrations as to justify the shooting by appellant in the exercise of his right of self-defense, and no such contention is made in brief of his counsel.

The foregoing outline of the commonwealth's testimony is the substance of that given by all the eyewitnesses introduced by it, consisting of Mrs. Booth, Cliff Bush, Huffaker, Raleigh Trent, and Rodney Bush, and it was not materially contradicted by defendant in giving his testimony in chief. After telling of what happened before and during the fight in the yard, he added:

> "Then I went home and got my gun and come back to see what he (Cliff Bush) meant, and Cliff was there with a gun in his hand at the door and I decided to get in behind a big rock that was there to keep Cliff Bush from shooting me from out of the house and as I went to get behind that rock, I had my gun in my hand, pointed in the direction of the house and it was accidentally discharged, went off. I never shot at the house or the children or anybody. The gun was accidentally discharged." On cross-examination he stated that he "was mad and went home to get his gun to defend himself and admitted he was in no danger while at home but came back to the Booth house with his gun to find out what Cliff Bush meant."

It will thus be seen that appellant was anxious to discover the meaning of some of the conduct, or of some of the expressions, of Cliff Bush, and to insure correct information with reference thereto he called in his trusted shotgun. When he arrived near enough to the house for that weapon to be of service to him, he sought the protection of the large rock located in front of the house and got behind it and pointed the muzzle of his gun toward and at the door of the house, and, being loyal to its owner, it at once proceeded on its own accord to serve him and discharged its load through the open door into the house and wounded the innocent infant victim. It is because of such unruly action on the part of his gun that defendant claims that the shooting was accidental, and that the court shold have given the proper instruction on that issue. But we do not agree with that contention. We freely admit, however, that if there had been any tangible and substantial evidence showing that the shooting with which defendant was charged had been accidental and, therefore, unintentional, it would have been the duty of the court in proper form to have so instructed the jury, and which proposition this and other courts have always recognized where there was testimony to justify it. But we do not regard the testimony of appellant in this case as sufficient to present that issue.

In all cases where the right to such an instruction was upheld some sort of description of the accidental shooting, indicating that it may have been accidental, was present and from which a somewhat plausible and reasonable inference could be drawn that the alleged criminal act was unintentional and accidental. But we have found no case, nor have we been cited to any, that would authorize the instruction contended for upon such unsubstantial, unreasonable, and incredible testimony as that given by defendant with reference thereto in this case. He admitted going to his residence for his gun and returning with it, and that he shielded himself behind the rock referred to. He further admitted that after doing so he elevated his gun and aimed or pointed it at the door of the Booth residence, and did not deny that he pulled back its hammer, or say that he did not place his finger on its trigger, and the court and the jury are asked to believe his illogical and preposterous statement that, under such conditions, and without any contributing cause, the gun of its own accord proceeded to discharge itself.

It also should not be overlooked that the shooting of the gun was in harmony with, and no doubt in furtherance of, defendant's expressed threat as to what he would do when he left the Booth residence to go to his nearby home for the purpose of procuring the gun. Courts are not blind, nor are they so stupid or simple as to attach credence to such testimony without the aid of some additional fact to authorize the inference that the shooting may have been accidental, even though such additional facts may have only remotely borne upon that issue. Although this is a criminal case, defendant admitted the shooting and the commonwealth proved that it was done maliciously and without legal excuse. Defendant attempted to contradict that showing by the fact that, although his gun fired while in his hands and when pointed in the direction of the target that was hit, yet the firing was "accidental" and which he had no intention or purpose to bring about, although he arranged his gun so that if it did fire (accidentally) its discharge would pass through the open door of the dwelling, the inmates of which mostly composed those whom he had threatened to exterminate when he started on his mission for his gun. We conclude that the law does not require courts to give credence to, or to take cognizance of, such frivolous and wholly unsupported statements, and for which reason the court did not err in refusing the instruction contended for.

Wherefore, the judgment is affirmed.