# Tiernay v. Commonwealth.

(Decided November 20, 1931.)

L. D. GREENE, ROBERT L. PAGE, and WM. M. DUFFY for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and defendant below, Charles T. Tiernay, shot and killed Rose McChord, in Jefferson county, Ky. Upon his trial under an indictment charg-

ing him with murder, he was convicted, and his punishment fixed at death. On this appeal his counsel argue three grounds for reversal of the judgment, which are: (1) That the conviction of defendant of the murder charge against him was and is flagrantly against the evidence; (2) improper and prejudicial remarks of attorney for the commonwealth in his closing argument to the jury; and (3) erroneous instructions of the court, each of which will be discussed in the order named.

■ It is not contended in support of ground 1 that the proven facts of the killing are insufficient to sustain the murder conviction if under the evidence defendant was shown to have possessed at the time sufficient mind to harbor the necessary malice to produce murder; but it is argued in support of that ground that the evidence overwhelmingly proved that defendant at the time of the shooting was so bereft of reason because of long excessive drinking, he being intoxicated at the time, that he was incapable of entertaining the necessary malice to convict him of murder, and that at most the jury could convict him of no higher offense than voluntary manslaughter, and for which reason the conviction for the highest degree of homicide was and is flagrantly against the evidence. But we do not agree with that argument. It is true that there was considerable testimony to show that defendant had been periodically an excessive consumer of intoxicating liquor for a number of years preceding the homicide, and, furthermore, that he was more or less intoxicated at the time he did the shooting with which he is charged. But there was likewise an abundant amount of testimony to show that when sober, which was, perhaps, at least half of the time, and that even when drinking, he prosecuted his business as a peddler, and that usually he was fully capable of determining between right and wrong. Furthermore, there was ample testimony from those who had come in contact with him on the day of the shooting to establish the fact, and authorize the jury to conclude, that on the particular occasion he not only knew what happened, but that he also intended and purposed it.

Deceased was, until some four or five years before the homicide, the wife of one John McChord; but about that time she became acquainted with the defendant, who insinuated himself into her affections and alienated them from her husband and produced a separation between

the two. After that defendant took up his abode at the home of deceased, and they thereafter unlawfully cohabited, and which unlawful relationship continued in the same residence until some two weeks before the homicide, when deceased changed her abode to a different section of the city of Louisville, in which she resided, with the view of breaking such relationship between her and defendant. But he followed her to her new residence and again tried to continue the relations to which she appears to have objected, and because of which defendant was guilty of conduct that caused the 17-year-old daughter of deceased to swear out a warrant for him on the morning of the day the homicide was committed. It had not been executed when defendant presented himself at the home that night, and deceased then notified him of the existence of the warrant in the hands of the officers, which so angered him that he threatened the lives of all the members of the household, and they fled for protection.

Deceased and her friend, Nelly Harrington, who was temporarily stopping with her, fled to a nearby beer joint with the view of telephoning for the officers, but the proprietor would not permit them to do so, and defendant soon appeared and immediately shot and killed deceased. No one disputes the facts concerning the killing as so briefly outlined, nor did the defendant himself do so in giving his testimony in his own behalf, since he stated while on the stand that on account of his then intoxication and his long continued indulgence in the same habit he was utterly without memory as to what happened on the day and at the time of the killing; in other words, that what transpired on that day was a blank page on his memory. The defense so made by defendant in his testimony and by some of the witnesses he introduced was properly submitted to the jury, and, we repeat, its finding that the defendant was at the time mentally capable of committing murder cannot be said to be flagrantly against the evidence, and for which reason this ground cannot be sustained.

■ The alleged incompetent argument of the commonwealth's attorney, and upon which ground 2 is based, was his reference to the fact that, if defendant was given only a life sentence, it would mean but a short imprisonment, because he would soon be entitled to a parole and be turned loose upon society to resume his depredations.

The exact language alleged to have been employed by the prosecuting attorney was: "Gentlemen, don't give the defendant life imprisonment, because that doesn't mean life imprisonment at all, it means he will be out in a few years and a menace to society." We have disapproved such arguments in a number of cases, among which are Seymour v. Commonwealth, 220 Ky. 348, 295 S. W. 142; Bolin v. Commonwealth, 206 Ky. 608, 268 S. W. 306; Chappell v. Commonwealth, 200 Ky. 429, 255 S. W. 90; and Postell v. Commonwealth, 174 Ky. 272, 192 S. W. 39—and prosecuting counsel should abstain from indulging in them. But, whether the error thereby committed would or not be sufficiently prejudicial in all cases to authorize a reversal of a conviction would necessarily depend upon the particular facts of the case; i. e., whether the error in the light of the proven facts was calculated to produce such a prejudicial effect on the verdict of the jury as to entitle the convicted defendant to a new trial, or whether, under the facts, the argument, though improper, could not possibly produce such a prejudicial effect and was therefore immaterial.

But in no event may defendant rely on this ground on this appeal because it is not presented to us in the way and manner to give us a right to consider it. Our opinions contain repeated announcement that questions of this nature, including this identical one, should be certified in the bill of exceptions and not presented solely in the motion for a new trial supported by affidavits, and which is the only way that the question is brought here in this case. If, however, it were competent for us to consider the question as so presented, it would then not be available to defendant because of the fact that the commonwealth filed an array of affidavits, including one from each member of the jury, that the alleged statement of the commonwealth's attorney was not made as is contended by counsel for defendant, and which he supported by a like or greater number of affidavits. Under such circumstances it will be presumed that the trial judge found that no such language was employed, a conclusion that could well be drawn from the record as so made.

For such reasons, and because of our conclusions reached concerning ground 3, we will put aside this ground without further comment further than to say that prosecuting counsel take great risk in piling up costs against the commonwealth incident to a new trial if one

should be granted therefor. Moreover, it is the duty of counsel to observe the rules of practice that have become so firmly settled as the one involved in this ground.

■ The only argument in support of ground 3 is the error contained in instruction No. 1, given to the jury, which says: "If the jury believe from the evidence in this case, beyond a reasonable doubt, that the defendant, Charles T. Tiernay, in this county and before the finding of the indictment herein, willfully and feloniously shot Rose McChord, with a pistol, and that said Rose McChord died as a result thereof, they will find the defendant guilty of willful murder as charged in the indictment and fix his punishment at death or at confinement in the penitentiary for life, in their discretion." No other instruction is complained of, nor could any be directed to them, since they submit the other questions arising upon such prosecutions in succinct and appropriate language. The objection to the inserted instruction No. 1 is that its langauge does not require the jury to believe beyond a reasonable doubt that defendant killed deceased either "maliciously" or "with malice aforethought." It only reqrires that the killing should have been done willfully and feloniously, and which is the appropriate language for the submission of the lessor offense of voluntary manslaughter. Indeed, the only difference between the two degrees of homicide is that murder is required to be done with malice aforethought or at least that it shall be maliciously done; the case of Turner v. Commonwealth, 167 Ky. 365, 180 S. W. 768, L. R. A. 1918A, 329, holding that an indictment for murder, as well as an instruction submitting it, will be sufficient if the word "maliciously" is included therein as descriptive of the killing, and that the law does not mandatorily require in such prosecutions that the words "with malice aforethought" be employed.

That case overruled the prior one of Tutt v. Commonwealth, 104 Ky. 299, 46 S. W. 675, 20 Ky. Law Rep. 492, which held that the trite phrase "with malice aforethought" was absolutely essential to a proper charge and submission of the crime of murder. The intervening cases of Shelton v. Commonwealth, 145 Ky. 543, 140 S. W. 670, and Watkins v. Commonwealth, 146 Ky. 449, 142 S. W. 1035, 38 L. R. A. (N. S.) 1052, held that an instruction in a murder prosecution that did not in appropriate form incorporate the necessary element of

malice fell short of the law's requirement, and a conviction of murder would be reversed because of such failure. Independently of those cases, and others cited therein, as well as text-writers, it is quite clear from the distinction between the two degrees of homicide (murder and voluntary manslaughter) that an instruction that did not recognize such distinction would be fatally erroneous. Indeed, the distinction consists solely in the element of malice, for without it the perpetrator of the homicide can in no sense be guilty of murder. He may be guilty of a lesser degree of homicide when the act of killing was not malicious, but, in order to render him guilty of murder, his deed must be either "maliciously" done or committed "with malice aforethought."

It is therefore apparent that the inserted instruction, and which was the only one submitting the murder charge and for which defendant was convicted, was and is so defective in the respect indicated as to render it prejudicially erroneous to the extent of imperatively requiring the granting of a new trial, unless other instructions in the case cured the error. We have examined the other instructions in this case and conclude that they do not do so. In cases where the death sentence is imposed, courts should not construe the other instructions to have such curative effect unless it clearly so appears, since the defendant with that degree of punishment hanging over him should be given the benefit of the doubt, and, in the absence of such clear curative effect, a judgment of conviction followed by the death penalty should not be approved. On the contrary, where the other instructions are so framed as, when considered with the defective one, the jury could not possibly have been misled, its verdict will not be disturbed, because the technical error in such case would thereby be cured and rendered immaterial.

The latter conclusion, however, is not supported by this record, and because thereof we conclude that the evident error pointed out was not cured by the other instructions given, and for which reason the judgment is reversed, with directions to set it aside and grant a new trial, and for proceedings consistent herewith.

The whole court sitting.