## Glenday v. Commonwealth.

(Decided June 22, 1934.)

FRED LISANBY, JAMES B. FINNELL, Jr., and S. B. TRIP-
LETT for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C.
WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirm-
ing.

The appellant, Francis Glenday, was jointly accused
with George W. Tincher, and others, of the offense of
willfully murdering Ben Keenon, which was committed
while robbing a bank located in Stamping Ground, Scott
county, Ky., pursuant to a conspiracy to rob it and while
carrying it out. Both appellant and Tincher were sep-
arately tried and both were found guilty and given the
death sentence. Tincher's conviction on appeal to this
court was affirmed in an opinion reported in Tincher

v. Commonwealth, 253 Ky. 623, 69 S. W. (2d) 750, and in it the facts preceding the robbery, as well as those occuring during its perpetration, are fully set forth and will not be repeated on this appeal, which is one brought by Glenday, whose trial was subsequent to that of his companion, Tincher. Many of the questions (such as the deficiency of the indictment, the introduction of incompetent evidence, and others) appearing in the Tincher opinion are urged as grounds for reversal of the judgment by appellant's counsel, but all of which we adversely disposed of in the Tincher opinion. Therefore none of them will be referred to, except the one made on the Tincher appeal, that the court erred in not submitting to the jury the accidental shooting of Keenon, and which contention was also denied by us in that case; but it is somewhat differently presented in this one, and which leaves for our present consideration only three of the grounds urged for a reversal of the judgment, and which are: (1) Error of the court in not submitting to the jury the alleged accidental shooting of the deceased; (2) improper argument of prosecuting counsel; and (3) alleged separation of the jury and misconduct of the sheriff having it in charge, each of which will be disposed of in the order named.

1. A reading of the opinion in the Tincher Case will disclose that counsel for appellant therein insisted that the mere fact of the utter groundlessness for the shooting of Keenon by Glenday (and who was the one who actually fired the shot resulting in his death) furnished grounds for the inference that he must have done so, either carelessly or accidentally, and for that reason an instruction on the reckless use of firearms, as well as one on accidental shooting, should have been given to the jury; but both of which we denied upon the ground that there was no proof that the shooting of Keenon occurred in either manner, and, in the absence thereof, no such issues were involved. In that trial Glenday did not testify, but he did appear as a witness in his behalf at his trial and admitted everything that was proven in the Tincher Case, including the conspiracy formed for the purpose of robbing the bank, his firing the shot that wounded Keenon, and from the effects of which he later died according to the proof of the physicians, and that at the time of the shooting he was standing near to Tincher, who was collecting the

cash and putting it into a sack, with his pistol drawn and pointed at the deceased. But he attempts to convert his act from a felonious and unlawful one into an accidental one by merely stating that the shooting was "not intentional" on his part, and that his gun "just accidentally went off." No element of an "accident" was testified to by him or any other witness, but only his conclusion statement that the shooting by him of Keenon was an "accident."

The occurrence in human affairs which is denominated an accident, and for the consequences of which criminal responsibility will either be entirely excused, or reduced from what it would be if the act was purposely and intentionally committed, is composed of certain elements clearly negativing a felonious or criminal intent, and, before one may rely on it in defense of a criminal prosecution, he must manifest to the court, by his proof, that such elements were present in his case, or that the evidence was sufficient to authorize the jury to find that they were present, and until such presentation is made the trial court is not called upon to submit the defense. In this case the only place in the entire record where the word "accidental" is employed was in the testimony of the defendant, and then only in the way and manner that we have outlined. He told nothing that gave even remote color to an accidental shooting by him of Keenon, but contented himself with expressing his bald-faced conclusion, and which we held in the recent case of Bush v. Commonwealth, 240 Ky. 195, 41 S. W. (2d) 1091, 1092, was insufficient to require at the hands of the court an instruction on accidental shooting. In overruling the same argument made in that case we said: "Defendant attempted to contradict that showing by the fact that, although his gun fired while in his hands and when pointed in the direction of the target that was hit, yet the firing was 'accidental' and which he had no intention or purpose to bring about, although he arranged his gun so that if it did fire [accidentally] its discharge would pass through the open door of the dwelling, the inmates of which mostly composed those whom he had threatened to exterminate when he started on his mission for his gun."

Here the pistol with which Keenon was shot was in the hands of appellant, pointed directly towards deceased, and there is no evidence that appellant was

pushed or struck by any one, or that he stumbled so as to produce an unintentional discharge of the pistol, either of which occurrences might have produced an element of an accidental shooting; and, in the absence of some such showing, we decline to prostitute the high functions of a court by recognizing the mere conclusion statement of the defendant as authorizing the instruction contended for. If it should be upheld and such a rule of practice approved by us, then any defendant in a criminal prosecution who relied on his right of self-defense, or on insanity, would be entitled to an instruction submitting it without any evidence in the case to sustain it, save and except his statement that he committed the crime "in self-defense" or that he was "insane," without stating the facts so that the court and jury might determine the issue. No case is cited by counsel in support of the contention that the evidence as so given was sufficient to justify a submission of the issue, although he does rely upon a number of cases wherein we held that, when the evidence was sufficient to create the defense, or to authorize the jury to so conclude, then it was the duty of the court to submit it. But, there being no such evidence in this case, the court did not err in refusing to do so; there is no substantial difference between the evidence on that issue in this case from what appeared in the Tincher opinion.

2. Employed prosecuting counsel in his closing argument to the jury said: "Talking about life imprisonment, do you know anybody that has stayed in prison for life? Suppose he got out of there and continued his start, murdering a man for money, what can you expect if you put him in prison now?" It is seriously contended that such remarks were materially prejudicial, authorizing a reversal of the judgment, and in support thereof our opinions rendered in the cases of Berry v. Commonwealth, 227 Ky. 528, 13 S. W. (2d) 521; Seymour v. Commonwealth, 220 Ky. 348, 295 S. W. 142; Postell v. Commonwealth, 174 Ky. 272, 192 S. W. 39, and others are cited and relied on, in some of which the error was held to be a reversible one under the peculiar facts of that case, while in others we only held that the argument was improper; but that under the facts it was not sufficiently material to authorize a reversal for it alone. In the case of Tiernay v. Commonwealth, 241 Ky. 201, 43 S. W. (2d) 661, 663, the question was presented to us, and in the course of the opinion

we referred to the cases relied on by counsel for appellant here, but declined to reverse the judgment therein because of the alleged erroneous argument, and in doing so we said, following a listing of the relied on cases: ''But, whether the error thereby committed would or not be sufficiently prejudicial in all cases to authorize a reversal of a conviction would necessarily depend upon the particular facts of the case; i. e., whether the error in the light of the proven facts was calculated to produce such a prejudicial effect on the verdict of the jury as to entitle the convicted defendant to a new trial, or whether, under the facts, the argument, though improper, could not possibly produce such a prejudicial effect and was therefore immaterial.'' That case, however, was reversed, but upon another and entirely different ground.

In 241 Ky. p. 573, 44 S. W. (2d) 592, 598, appears the case of Holmes v. Commonwealth, in which the same question was strenuously relied on, but under the facts therein (which clearly and unmistakingly showed defendant's guilt) we declined to reverse the judgment of conviction therefor, and in doing so said: ''This and similar statements have so often come under the condemnation of this court, it is to be wondered that the attorneys for the commonwealth do not refrain from making them. However, our attention has not been called to any case holding that such statements, standing alone, will constitute reversible error except the case of Berry v. Commonwealth, 227 Ky. 528, 13 S. W. (2d) 521, where it was so held under the peculiar facts therein. The cases of Chappell v. Commonwealth, 200 Ky. 429, 255 S. W. 90, and Postell v. Commonwealth, 174 Ky. 272, 192 S. W. 39, in which similar arguments were criticized and condemned, were not reversed because of the improper argument. There are numerous cases which give recognition to the impropriety of such argument yet hold that it does not constitute such prejudicial error as will warrant a reversal. Bolin v. Commonwealth, 206 Ky. 608, 268 S. W. 306; Hall v. Commonwealth, 207 Ky. 718, 270 S. W. 5; Moore v. Commonwealth, 223 Ky. 128, 3 S. W. (2d) 190.''

It therefore will be seen that, while we have steadfastly condemned such an argument as being improper, we also said that whether the error in committing it, or in the court in not excluding it, is or is not a reversible one is dependent upon the facts of each case, and, where

they make it appear that the homicide was committed in cold blood and for no other than a venal and felonious purpose, a judgment of conviction will not be disturbed therefor, there being no other error in the case.

Furthermore, the cases in which a reversal was ordered because of such remarks and the reason why they are regarded as improper are more or less bottomed upon the theory that counsel in making them informs the jury of something that its members possibly did not know, and which theory in this day of advanced enlightenment, wherein those now eligible for jury service have had opportunities to become enlightened and informed, is wholly unfounded, we are inclined to the conclusion that possibly greater effect has been given to such remarks, in some of the cases, than what the appellant was entitled to. We are constrained to make that statement in the light of present conditions with reference to law observance. Those conditions are, that gangsterism, highway robbery, bank hold-ups, and other felonious depredations have become expert professions by a large element of the lawless members of society, and because of which life has become cheap and security of ownership in property grievously impaired. Such conditions can be rectified only by a firm determination on the part of those intrusted with the enforcement of the criminal law to see to it that those who have been clearly proven to be guilty shall receive their just reward, and to not allow any technical error that does not clearly show prejudicial effect to interfere therewith. We therefore conclude that this ground is without merit.

3. The foundation for ground 3 arises from these facts: One Mason Hughes was a member of the jury, and, when he was accepted thereon, his wife was slightly ailing, and on the morning of the day upon which the verdict was returned he requested the sheriff having the jury in charge to permit him to converse over the telephone with a near neighbor, a Mrs. C. S. Davis, and ascertain from her the condition of his wife, and which the officer consented to, and in his presence and in the presence of the other jurors Mrs. Davis was called. In the short conversation that occurred between them the juror was informed that Mrs. Hughes had suffered some the night before and expressed a desire for her husband to return home as soon as possible. However, no alarming information was given to the juror by Mrs. Davis, as is disclosed by her affidavit. Nothing therein ap-

pears of either an exciting, much less an alarming, nature, or which would be calculated to induce one to return a verdict contrary to the dictates of his conscience as such functionary in the machinery for the enforcement of the law. The juror in his affidavit tries to intimate that the information above given to him by Mrs. Davis in that conversation may have operated upon him in a way to hasten his verdict so as to be released; but, under the provisions of section 272 of our Criminal Code of Practice, a juror is incompetent to establish a ground for a new trial, except that the verdict was arrived at by lot, and which renders the affidavit of the juror Hughes in this case of no avail, except to stultify himself and to reveal the fact of his incompetency to occupy such a position. But neither he nor any of those whose affidavits were filed in support of this ground make the remotest claim that the subject of the trial of defendant was either directly or indirectly mentioned, and all of the telephone conversation, we repeat, was had in the presence of the officer and the other jurors.

The case of Magan v. Commonwealth (Ky.) 119 S. W. 734, 736 (not elsewhere reported), relied on by counsel for appellant in support of this ground, falls far short of doing so. In that case a juror was permitted to separate from both the officer and his fellows, and hold a telephone conversation upon subjects or matters wholly unknown to the sheriff, and, of course, who heard none of it, as is shown in the opinion when it says: "In fact, it is not clear that the sheriff knew to whom these conversations over the telephone were addressed." Following language in the opinion condemns such practice and intimates that it might in some cases be ground for reversal, but which formed no basis for the reversal in that case, since the ground was not properly presented for this court's consideration. Of course, it will at once be perceived that the facts of that case are most materially different from those appearing in this one touching the point under consideration.

Other cases relied on by counsel in support of this ground are Campbell v. Commonwealth, 162 Ky. 106, 172 S. W. 110, and Chilton v. Commonwealth, 170 Ky. 491, 186 S. W. 191, Ann. Cas. 1918B, 851. A reading of those opinions will be sufficient to disclose the marked difference between them and the instant one. On the contrary, this case is more analogous, as relating to the

same question similarly presented, to the case of Canter v. Commonwealth, 176 Ky. 360, 195 S. W. 825, 830. In that case a juror obtained permission of the sheriff having the jury in charge to communicate over the telephone with his wife, and the conversation was had in the presence of the other jurors and of the officer, as thus stated in the opinion: "The sheriff and jurors, from their proximity, could hear what the juror said, but, of course, could not hear what the juror's wife said to him; but there is no claim or contention that anything was said with reference to the cause on trial or anything in connection with it." In disallowing that ground as one authorizing a reversal of the judgment of conviction, we said, inter alia: "The permitting of a juror to hold a conversation over the telephone where the officer cannot hear what is said to the juror is a practice not to be approved or commended, and under similar circumstances should be universally condemned;" but we therein further said that: "It has, however, never been held that to speak to a juror upon a subject not connected with the trial is a ground for reversal of the verdict, or that such communication, when made in the presence of the officer in charge and the other jurors, has never been held to be of such a prejudicial character as to warrant setting aside the verdict of the jury."

The section of the Code (see Cr. Code Prac. sec. 246) does not mean, nor was it ever intended, that a juror when he became such should assume a mute attitude and to forego all conversation upon subjects wholly disconnected from the case on trial in which he was serving, nor was it intended thereby that a juror should abandon all concern over the condition of any ailing member of his family. The substance of what occurred in this case, as a basis for this argument, is that the juror, Hughes, desired to know the condition of his wife, and he inquired of Mrs. Davis concerning it, all of which happened in the manner indicated, and in which he was given no disturbing information. It would therefore be stretching the intent and purpose of our Code provisions, enacted to guard jurors against outside influence, to hold that they embraced situations such as this record discloses. It perhaps would be better practice for the officer to hold such conversations and to impart the information he received to the inquiring juror. It would at least remove every vestige of opportunity for

322

reference to any matter connected with the trial; but in no case to which we have been cited, nor any that we have been able to find, has this or any other court held that such protective Code provisions of practice are violated under facts similar to those here presented.

It will be perceived that the alleged errors relied on for a reversal of the judgment are at best extremely technical, even if they should be classified as errors at all. Human life is, at best, short, and its possessor can make himself happy and useful and his country prosperous and progressive only by following an upright and honorable course. The army of transgressors, which in recent years has become alarmingly increased, travels the thorny path, and a most effective way of reducing the number of those who join it is to convince them that the law is a stern master, and demands of them, after conviction at a trial free from substantial error, the payment of the full penalty. The conditions also admonish courts and all agencies for the enforcement of the law that the guilty should not escape because of trifling technicalities, although they may have at one time been otherwise regarded, so long as they could not, under the conditions of the trial, have operated to the prejudice of the accused. This record discloses that appellant had become a candidate for election to the position which the verdict of the jury consigned him for some time prior to the killing of Keenon, since he early joined the group of the enemies of orderly society. The latter, for its own safety and protection, demands compliance on his part with the verdict, and we can discover in this record no legal reason why he should not be compelled to do so.

Wherefore the judgment is affirmed, the whole court sitting.