## Stewart v. Commonwealth.

(Decided June 24, 1938.)

FLOYD TAYLOR for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

About 9:30 A. M. Saturday, July 17th, 1937, in front of Whitfield's store or commissary, in the hamlet of Crockett, in Bell County, Kentucky, Arter Stewart shot and instantly killed Press Ballou, his wife's paramour. Stewart was charged by the indictment with murder, and upon his trial thereunder begun on March 2nd, 1938, he admitted the homicide and plead "self defense". He was convicted of manslaughter, his punishment fixed at 15 years in the penitentiary, and his motion and grounds for new trial having been overruled, he has appealed. We shall state and dispose of his alleged errors as we reach them.

## Excluded Evidence

The commonwealth introduced as a witness Grant Helton, who, on cross examination, testified that in a conversation with him and Will Shepherd, about a week before this homicide, Ballou had said he had had intercourse with Stewart's wife. At the first possible moment the accused called Will Shepherd as a witness and asked him about the above conversation on the mountain with Grant Helton and Ballou, but in spite of all he could do all he could get out of Shepherd as to what Ballou had said was: "I courted his woman, I don't deny it". No amount of questioning could induce Shepherd to say to what man or woman Ballou had referred in his remark. Whether Shepherd did not understand the purpose of this persistent interrogation or understood thoroughly and was purposely concealing this woman's identity by his evasive answers we cannot tell, but the court did not err in striking out all his evidence relative to "courting his woman", when the accused was unable to get the witness to say to what woman the remark referred.

Counsel for accused is complaining in his brief that the court erred in excluding the evidence of this witness about threats made by Ballou. Here is all this witness said relative to threats:

"Did you ever hear him make any threats against Arter Stewart? A. No."

There was no testimony of this witness relative to threats excluded. He gave none.

## Juror's Telephone Talk

Upon the conclusion of the argument of the attorney for the Commonwealth, the court submitted the case to the jury, saying to one of the members of the jury, to-wit: H. H. Downey, in the presence and hearing of all the jury, "I am informed that some member of your family is sick and they want to talk to you. Before taking up the discussion of the case, you may go to the telephone with the Sheriff and the rest of the jury and communicate with them." The wife of the juror, H. H. Downey, had been called away on account of the illness of a relative, and the nurse at the hospital in Middlesboro telephoned the trial Judge and asked that the juror be notified of the illness of one of his children. The court did this in open court, in the presence of defendant's attorney and the defendant, and of the entire jury and the juror, along with the entire jury and the Deputy Sheriff, were allowed to go to the Circuit Clerk's office, in company with the entire jury and the Sheriff in charge, where he, in the presence and hearing of the Deputy Sheriff in charge, talked to the nurse about the condition of his family.

To all of that the accused objected and accepted, but he made no motion to discharge the jury and continue the case. With full knowledge of what had occurred he merely entered an objection and reserved an exception. In other words his conduct indicates he concluded to let the trial go on and perhaps thought if the jury should return a verdict favorable to him then it would be all over and he would be happy, whereas, if the jury's verdict should not be favorable, he would then rely on this juror's telephone conversation as a reversible error. In other words he evidently concluded he would wait and see—he would speculate on the result. We have had occasion heretofore to consider this question in a case involving a death sentence. Glenday v. Com., 255 Ky. 313, 74 S. W. (2d) 332. The whole court considered it carefully and it is discussed with elaboration in that opinion, and we now refer to that opinion and upon it as authority we hold that this is, not reversible error.

### Time for Argument

Counsel for accused asked for an hour for argument. The court allowed him 40 minutes and he is complaining of that. This is a rather short record, less than 70 pages of evidence, many witnesses testifying to the same things, no technical or expert testimony; little, almost no conflict in the testimony, instructions simple and confined to murder, manslaughter, self-defense, instructions under sections 238 and 239 of the Criminal Code of Practice and three short definitions. It would seem that no one could take this case and make an argument of more than 30 minutes without boring the jury, unless he were a man of most unusual eloquence. The restriction of the argument to 40 minutes on a side was not unreasonable.

### Conduct of Attorney for Commonwealth

Complaint is made of the following remarks made by the. Commonwealth's attorney in the course of his argument:

> "Mr. Taylor says that Ballou had a sack of groceries on his right shoulder. I don't know whether he had or not, but I do know that Matt Sizemore who is a member of your own jury says that the sack was on his left shoulder".

The defendant objected to that part of the statement, which says, "Sizemore a member of your own jury". The court overruled the objection to which the defendant excepted and the court further said, "There is no objection to that Mr. Taylor, Mr. Sizemore is a member of the regular panel of the jury. The Sizemore referred to, though a member of the regular panel, was not one of the trial jurors, but was a witness in the case.

The Commonwealth's Attorney made this statement in his closing argument, "I mentioned this case to a man out here on the street this morning. I mentioned Mr. Sizemore and he said, 'I don't know anything about the case, but I would believe anything Mr. Sizemore said,'" to which the defendant objected. The court sustained the objection, saying, "Gentlemen of the jury, that is not a proper statement and you will not consider it", to all of which the defendant excepted.

What was said by this Commonwealth's Attorney cannot be commended. He should remember he repre-

sents the defendant just as much as he represents any one else.

"The Commonwealth is not in pursuit of victims, but desires to inflict punishment only in a legal and constitutional way upon the guilty." O'Brian v. Com., 9 Bush 333, 72 Ky. 333, 15 Am. Rep. 715.

It was improper, but the court excluded it. The promptness with which the court sustained the objection of the accused to the remark, and the court's exclusion of it, we feel cured the matter.

Finding no reversible error in the record, the judgment is affirmed.

The whole court sitting.