## DENNISON v. COMMONWEALTH.

Court of Appeals of Kentucky.
June 19, 1953.

E. R. Gregory, Bowling Green, for appellant.

J. D. Buckman, Jr., Atty. Gen., and Walter C. Herdman, Ass't Atty. Gen., for appellees.

COMBS, Justice.

Arthur Dennison appeals from a sentence of two years' imprisonment for the offense of storehouse breaking. He contends the judgment should be reversed for two reasons: (1) he was required to come for

ward in court and plead to the indictment along with a codefendant who had been sentenced and sent to the penitentiary on another charge and who was then in chains; (2) the petit jury panel, from which defendant was required to accept a jury, did not contain the requisite number of jurors.

Dennison was indicted jointly with James Crouch and James Wilson for breaking and entering a whiskey store. Before the trial of the case, Crouch was convicted and sent to the penitentiary for another offense. When the indictment against Dennison, Crouch and Wilson was called, the three defendants came forward and entered pleas of not guilty. Crouch, who had been returned from the state reformatory for the trial, was in shackles and handcuffs. A motion for separate trials was sustained and the Commonwealth elected to try Wilson first. After the jury was qualified in the Wilson case, the remainder of the panel were excused and were not present during that trial. Wilson was convicted and sentenced to imprisonment for one year. On appeal to this court, the sentence was upheld in Wilson v. Commonwealth, 258 S.W.2d 497. Dennison was tried four days later at the same term of court.

During the interim between Wilson's trial and the trial of Dennison, motion was made by Dennison to continue his case until the succeeding term of court or, in the alternative, "until a new jury panel has been summoned." The motion was overruled.

When Dennison's case was called for trial, the court made this statement:

"* * * the Court will exclude from calling upon this jury all those who sat upon the case against James Wilson on last Friday. After exceeding (exhausting) the 18 remaining jurors, the Court will require the Sheriff to call sufficient number of men, if necessary, to give a competent jury for the trial of the case."

Dennison's counsel thereupon inquired of the clerk as to the number of jurors remaining in the jury panel, and it was noted of record there were eighteen. Dennison's counsel then moved the court to summon enough jurors to constitute "a legal panel." His motion was overruled and the court proceeded to impanel a trial jury. After the regular panel was exhausted, a sufficient number of bystanders were summoned to complete the jury. It may be observed here that the defendant makes no specific complaint about the summoning of bystanders, his counsel apparently conceding that after the regular panel was exhausted the court was authorized, under KRS 29.280(3), to direct that a sufficient number of bystanders be summoned to complete the jury.

■ There is no merit in Dennison's contention that he was prejudiced by reason of his codefendant Crouch being in shackles and handcuffs at the time they were called to answer to the indictment. It is not clear from the record just what directions the court gave with reference to the removal of Crouch's bonds during the course of the proceedings, but conceding, for the purpose of argument, that the bonds remained on him during his entire stay in court, this could not have prejudiced Dennison. We know of no authority for the proposition that because one defendant is brought into court in bonds this constitutes legal prejudice to another defendant. Even the theory of guilt by association does not reach that far.

Dennison's complaint about the depletion of the jury panel presents a closer question. KRS 29.130(6) provides that "* * * not less than twenty-four nor more than thirty jurors shall be selected, in the discretion of the judge, to constitute the regular panel of the next petit jury." KRS 29.280 authorizes the judge to have the sheriff summon not more than three bystanders to supply vacancies on the jury panel. If there are more than three vacancies on the panel, the statute requires that additional names be drawn from the drum.

In Williams v. Commonwealth, 254 Ky. 277, 71 S.W.2d 626, 628, it was said:

"In both civil and criminal cases 'if for any reason the panel is depleted,

456

the court is mandatorily required to draw from the drum or wheel case to supply vacancies, except the court may direct the sheriff to summon not exceeding three bystanders for that purpose, but in neither a civil nor criminal case can he require the parties without their consent, to begin the voir dire examination with less than 24 members on the list of the petit jury containing more than three bystanders.' "

 Dennison's counsel insists that the correct rule is stated in the Williams case, and that when the trial judge excluded from the jury panel the twelve jurors who had sat in the Wilson case, he thereby deprived Dennison of having a legal panel of at least twenty-four jurors from which to select a jury. We agree with counsel that the rule is correctly stated in the Williams case, but we do not agree that Dennison was deprived of any right given to him under the doctrine of that case. Here, the trial court had impaneled and had in attendance the requisite number of jurors. It was not necessary that every juror on the panel be qualified to sit on Dennison's jury. It was necessary only that there be available to Dennison a jury panel, legally drawn, consisting of the requisite number of jurors possessing the general statutory qualifications. The fact that some of those on the panel might not have been eligible to sit on Dennison's jury by reason of having sat in the Wilson case, or for other reasons, does not mean they could not remain as members of the panel and be counted as such. The statute does not require that the court furnish to every defendant a separate panel of twenty-four jurors, each of whom is qualified to sit in that particular case. Such a requirement would not only result in cumbersome and expensive trial procedure, but would add nothing to the rights of litigants in jury cases. When a court makes available to a litigant a panel consisting of the requisite number of jurors possessing the general statutory qualifications, the requirements of the statute in this respect are fulfilled. The burden then shifts to the litigant to raise by challenge the question of the qualifica-

tions of any individual juror to sit in that particular case.

In Dennison's case, at least twelve members of the panel were disqualified on the ground of implied bias by reason of having served as jurors in the Wilson case. Criminal Code of Practice, section 210(4). But this disqualification could be waived by him. O'Brian v. Commonwealth, 9 Bush 333; Riley v. Commonwealth, 190 Ky. 204, 227 S.W. 146. This disqualification did not prevent the jurors from being considered and counted as part of the jury panel, and their disqualification did not reduce the panel below the statutory minimum.

But it is suggested that when the trial court voluntarily excluded the twelve who had served on the Wilson jury it thereby, as a matter of law, reduced the panel below the statutory minimum. We do not so regard the court's action. The judge knew from experience, that Dennison's counsel had the legal right to, and would, challenge on the ground of implied bias those jurors who had served in the Wilson case; and that the challenge would have to be sustained and those jurors excused. So the judge, without waiting for a formal challenge, voluntarily and apparently with the tacit approval, and certainly with the acquiescence of Dennison's counsel, agreed that those jurors need not be called into the jury box. The judge merely anticipated counsel's next move and acceded to his request without consuming the time of the court in waiting for a formal motion and making a formal ruling. No objection was made or exception taken to the court's action in this respect, for the very obvious reason that if the judge had not taken this action sua sponte Dennison's counsel undoubtedly would have requested the same action by formal motion. Moreover, the court's action in excluding the twelve jurors was beneficial to Dennison rather than prejudicial. He had already objected to being tried at that term of court because some of the members of the panel had sat in the Wilson case and had had the opportunity to communicate with the other members of the panel. Obviously, there-

fore, he did not want to be tried by any of the jurors who had heard the Wilson case. So the court in excusing those twelve jurors was merely protecting Dennison's rights.

Dennison's real complaint is directed not to the action of the court in excluding those jurors who had served in the Wilson case, but to the court's refusal to draw from the jury drum sufficient names to replenish the panel with new jurors. This the court was not required to do.

The judgment is affirmed.

CAMMACK and MOREMEN, JJ., dissenting.